## HIRAM WEBSTER v. SMITH W. FOWLER.

*Malicious prosecution—Advice of counsel—Charge to jury.*

1. It is error to instruct the jury that one of two versions of a transaction is proven where the testimony is conflicting regarding the same.

2. The advice and concurrence of a public prosecutor is not a good defense to an action for malicious prosecution unless it appears that the defendant fully and fairly disclosed to such officer everything within his knowledge tending to cause or exclude belief in plaintiff's guilt; and whether such disclosure was made is a question for the jury to determine, and not for the trial or appellate court.

Error to Manistee. (Judkins, J.) Argued October 8 and 9, 1891. Decided December 22, 1891.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*S. W. Fowler,* in *pro. per.* (*Smurthwaite & Higgins,* of counsel), for appellant.

*George L. Hilliker,* for plaintiff.

McGRATH, J.   It is a well-established rule of law that the advice and concurrence of a public prosecutor is not a good defense to an action for malicious prosecution unless it appears that the defendant fully and fairly disclosed to such officer everything within defendant's knowledge which would tend to cause or to exclude belief in plaintiff's guilt; and whether the defendant did make a full and fair disclosure to the district attorney was a matter for the jury to determine, and not for the trial court or this Court.

Plaintiff, upon a complaint made by defendant, had been arrested, jailed, afterwards admitted to bail, and finally discharged *upon his preliminary examination,* upon a full disclosure of the facts, *all of which were within defendant's knowledge* when he made the complaint.   Defendant should have disclosed *all* the facts,—as well those tending to show innocence of any criminal intent as those tending to criminate; and, being himself a lawyer, he is presumed to know the relevancy and materiality of the facts and circumstances which would tend to exclude a belief in plaintiff's guilt.   He not only did not disclose the facts, but he forwards the letter to the district attorney, informing him that it is an attempt at black-mail. The district attorney prepares the complaint, and forwards it to defendant, directing him that,—

"Should there be anything in the circumstances that I have not understood, correct the form and statements of fact until it shall properly describe it."

Defendant then makes the complaint, charging plaintiff with having devised a scheme and artifice to defraud defendant, said scheme being to procure by fraud and

artifice from defendant the sum of $25 by threatening to publish certain slanderous and false things concerning defendant.

Defendant had advanced $25 to one Layden. The company had reimbursed him. Defendant claimed that plaintiff was directed by a resolution passed by the board of directors in August, 1887, to charge the amount up to Layden, and that plaintiff had neglected to make the charge. Plaintiff denied that he had ever been so directed, or that any such resolution had ever been offered or passed by the board, or that at any time the company owed Layden $25. The records of the company which were kept of that meeting show no such resolution, and others who were present at the meeting testify that no such resolution was offered. Defendant presented several bills at that meeting for moneys paid out by him, and he was allowed the sum of $141, which included the $25 paid Layden, but that amount was paid in stock, and no entry was made on any other book of such allowance or payment. Afterwards, in 1888, in settling up with plaintiff, the company, at the instance of defendant, deducted this amount from the balance due plaintiff, but plaintiff did not know of that fact until afterwards, as his claim involved several unsettled matters. Upon the trial Layden testified that defendant had offset that $25 against certain moneys paid to defendant by Layden. These facts were not disclosed to the district attorney, and it is but fair to presume that, if they had been, he would not have advised a complaint. Plaintiff was, at the date of writing the letter, ignorant of the last deal between Layden and defendant, but defendant knew all about it when he made the complaint. Defendant was a large stockholder in the company, and if plaintiff never had been directed to charge the amount to Layden, and

89 MICH.—20.

it was at defendant's instigation that plaintiff was compelled to pay it, defendant was morally bound to right the wrong done, and the threat to expose the transaction was not an attempt to extort money from defendant or to black-mail him, nor would the publication of those facts be either slanderous or false. It was not necessary upon the trial of the criminal case that plaintiff should show a pending legal obligation on defendant's part to pay plaintiff the sum of $25 to establish his innocence. If defendant had received this $25 the second time from Layden, he was then bound in good conscience to pay it over to plaintiff, instead of causing his arrest and imprisonment for demanding it.

I think, however, that the judgment should be reversed because of prejudicial error in the court's charge to the jury. Layden testified that he was in possession of certain premises under a land contract with defendant. He had paid $36 upon this land contract. Layden testified that Fowler had in the fall of 1887 sent a bill to witness for rent.

"I bought a place of him, and he wanted rent. He said the contract was due, and I told him that I guessed not; it wasn't due until March, 1888, the first payment; and he said, 'Well, this $25 that I let you have to go south with, and with what you have paid on the contract, we will call it paid, and give up the contract.' He said, 'If you want to stay there, you will pay rent this winter;' and I went on and paid rent until April, and then went to Muskegon.

"Q. Do I understand you to say that [contract] was canceled on account of that $25?

"A. Yes, sir, that is what he told me. I paid rent from that time."

In relation to the same matter defendant testified:

"We were talking in the office, and he was speaking about it. He hated to give up his dwelling, and I called

his attention to the fact that he had had the use of it for over a year and a half without any pay whatever; that he was really owing me about $100; that I had also advanced $25 for him to go to Hot Springs and taken my pay in company stock, and I thought I had lost enough, as he was worth nothing, and I had to stop there. I told him that was the end of it."

The court, referring to the matter, instructed the jury as follows:

"The plaintiff in this suit was by resolution or some action of the company charged with this $25. It was taken out of his wages on settlement afterwards, and Mr. Fowler collected this money back from Mr. Layden. These facts stand out in this case as proven."

Counsel for defendant interrupted the court, saying:

"It is not conceded that he ever collected that money back from Mr. Layden. That is denied by the defendant.

"*The Court:* The evidence tends to show it on the part of Mr. Layden,—that is, the evidence on the part of the plaintiff."

Defendant insisted that he had acted in good faith. Whether or not he had twice collected this money, once from the company and again from Layden; whether he had caused plaintiff to be charged with the amount, and afterwards collected it from Layden,—were important questions bearing upon defendant's good faith. Defendant's version of the transaction was consistent with good faith. The testimony regarding it was conflicting, but the court instructed the jury that the version of the transaction as related by Layden was proven.

For this error the judgment must be reversed, and a new trial ordered.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred with McGRATH, J.

GRANT, J. *(dissenting)*. This is an action for malicious prosecution. Plaintiff had verdict and judgment.

In 1888 defendant was a candidate for a State office. Plaintiff at that time was residing in Mississippi. Plaintiff wrote and sent through the mails to defendant the following letter:

"BELLEVUE P. O., MISS., Sept. 23, 1888.
"MR. S. W. FOWLER,
     "Manistee, Mich.
"Dear Sir:
"I see by the papers that you are a candidate for a State office. Now, I have this to say: You had the ($25) twenty-five dollars you paid Peter Layden on the 17th of June charged to me, and I did not know it until after I had agreed to settle with the Co. Now, what I am going to say is this: If you send me that ($25) twenty-five dollars it is all right; if not, I will have a statement of that transaction published in every paper I can get it in, both Republican and Democratic. I will wait ten days for the money. If it is not here by that time it will be published, as I have friends who are anxious to publish it against you. Mr. McGehee and Mr. Chapin both told me that you were the cause of its being charged up to me, and you know that Peter never had that amount due him. Maxted and myself gave him money to help get home with. If you send that amount inside of ten days from date I have nothing to say; if not, I will do you all the damage I can, and shall try and collect it besides. I have the bill giving the date you gave the money to him, and that was ten days before I left Michigan. Expecting to hear from you before the ten days expire, I am,
                              "Respectfully,
                                   "H. WEBSTER."

To this letter defendant made no reply, and plaintiff published no statements as therein threatened. On the following January plaintiff returned to Michigan. Thereupon defendant inclosed a copy of this letter to the United States district attorney with the following letter:

"MANISTEE, January 23, 1889.
"Friend GODWIN,
          "U. S. District Attorney.
"Dear Sir:
"I inclose a copy of a letter from Hiram Webster, then

of Bellevue, Miss., in which he attempts to black-mail me, and uses threatening language, for the sending of which through the post-office I think he is liable. He is here now, for a short time. Please let me know what to do, give instruction, send blanks, etc., and greatly oblige,

"Yours truly,
"S. W. FOWLER."

The district attorney replied as follows:

"GRAND RAPIDS, MICH., Jan. 25, 1889.
"Hon. S. W. FOWLER,
"Manistee, Mich.

"Dear Sir:

"Your communication is at hand, and I think the defendant liable for this letter under the provisions of § 5480. I have prepared a complaint and warrant following that statute, and inclose the same herewith. You may take the same before Judge McAlvay and make your complaint, and procure your warrant, and have him arrested as promptly as may be, and notify me, and I will go and attend to it. Should there be anything in the circumstances that I have not understood, correct the form and statements of fact until it shall properly describe it. With personal regards, I am,

"Yours very respectfully,
"G. CHASE GODWIN,
"U. S. Attorney."

The defendant then went before the commissioner, made complaint, and a warrant was issued, upon which plaintiff was arrested. The examination was had February 1, and plaintiff was discharged, whereupon he instituted this suit.

The transaction referred to in plaintiff's letter is substantially this: Defendant was a large stockholder and president of a mining company doing business in Arkansas. Layden was sent there from Michigan in the employ of the company. Defendant advanced to him $25 to pay his expenses there. Plaintiff was the book-keeper of the company, and was instructed by the directors of the company to deduct this amount from Layden's wages. This plaintiff neglected to do, and when he was dis-

charged from the company's employ this amount was deducted from the amount due him. By a vote of the directors of the company defendant was paid this $25 in stock. Plaintiff claims that this money was charged to him at the instigation of defendant. This comprises all the knowledge of the transaction that plaintiff had at the time he wrote the letter. Subsequently, and just before the trial of this cause, he saw Mr. Layden, who informed him of a conversation and deal he had had with defendant some time in 1887. Layden was indebted to defendant on a land contract for $400 and some interest. They had some talk about surrendering the contract, which Layden says they finally did. During this negotiation Layden testified that defendant said:

"Well, this $25 that I let you have to go south with, and with what you have paid on the contract, we will call it paid, and give up the contract. If you want to stay there, you will pay rent this winter." Layden further testified: "I went on and paid rent until April."

From this it is argued that defendant had received this $25 twice. At the time plaintiff wrote the letter he had no knowledge of this arrangement, and therefore did not write it upon any knowledge or supposition that defendant had been twice paid.

It is entirely clear that plaintiff had no claim, legal or equitable, against defendant, and that defendant had not been paid twice. If the arrangement, as testified to by Layden, but which is denied by defendant, was made, it constituted no payment. It was used by defendant merely as a means to secure the surrender of the contract. Defendant's counsel requested the court to direct a verdict in his favor, for the reason that he had submitted all the material facts in the case to the United States district attorney, who advised the prosecution of plaintiff. No authorities need be cited to the proposi-

tion that if this were done plaintiff could not recover. It is also well settled by the decisions of this Court that if probable cause existed for the prosecution, and if the material facts were submitted to the prosecuting officer, it then becomes immaterial as to the real motive which prompted the prosecutor. *Hamilton v. Smith*, 39 Mich. 222; *Smith v. Austin*, 49 Id. 286.

What material facts did defendant fail to communicate to the prosecuting officer? Should he have told him that plaintiff had no claim against him? This he did, in substance, in his letter, and it was true. Threats to publish the fact that one owes another an honest debt, if it is not paid, cannot be called "black-mail," and it is fair to presume that the district attorney acted upon this understanding. The only other fact to communicate was that the mining company had deducted the $25 from plaintiff's wages, and paid it to defendant, under the circumstances which are above stated. I am unable to see how that was a material fact for the consideration of the district attorney, or how it could have influenced him to refrain from advising prosecution. The charge against plaintiff was that he had devised a scheme and artifice to defraud defendant by opening a correspondence and communication with him through the post-office establishment of the United States, and to procure by means thereof the sum of $25 by threatening and representing that he would publish certain slanderous and false things, etc. The criminal complaint was made under section 5480, Rev. Stat. U. S., which is as folows:

"If any person, having devised or. intending to devise any scheme or artifice to defraud, or be effected by either opening or intending to open correspondence or communication with any other person, whether resident within or outside of the United States, by means of the post-office establishment of the United States, or by inciting such

other person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place any letter or packet in any post-office of the United States, or take or receive any therefrom, such person so misusing the post-office establishment shall be punishable by a fine," etc.

We are not called upon to determine whether the letter itself, coupled with the fact that plaintiff had no claim against defendant, enforceable in law or equity, made a proper case for prosecution under this statute. If it did not, then no blame legally attaches to defendant. The district attorney has eliminated that question from this case by advising the prosecution, which, under all the authorities, relieves the defendant from liability, unless there are other facts which he should have communicated. Now, if the district attorney had been informed of the whole transaction in regard to this $25 he would have found that plaintiff knew at the time that it had been charged to him; that it was the company that did it; and that the only claim plaintiff had was against the company, and that no reason existed for any attempt on the part of plaintiff to obtain it from defendant. Clearly these facts could not have influenced or controlled his advice in the matter. Nor do I think that of themselves they afforded any reason why the prosecution should not have been instituted. The intent to defraud was the gist of the offense charged, and it was quite probable that upon the examination plaintiff might have convinced the commissioner of the absence of such intent. I think the defendant, under this record, was clearly within the protection of the rule exempting one from the charge of malicious prosecution where he has stated all the materal facts to the prosecuting officer.

Judgment should be reversed, and no new trial ordered.