PRINE *v.* SINGER SEWING MACHINE CO.

1. FORGERY—FRAUD—MALICIOUS PROSECUTION.
    In the offenses of forgery or uttering forged instruments, a fraudulent intent is the gist of the crime.

2. MALICIOUS PROSECUTION—FORGERY—PROBABLE CAUSE.
    Testimony that plaintiff, in an action for malicious prosecution, took orders for sewing machines as agent for defendant, to be paid for in cash, and executed leases which he signed or caused to be signed in the name of the purchasers, and forwarded to defendant, plaintiff claiming that he followed a custom of the agency in so doing, for the purpose of keeping a record of the sale, and gained no profit by the transaction, presented a question of fact whether or not defendant had probable cause to arrest plaintiff, for forgery.

3. SAME — JUSTIFICATION — PROSECUTING  ATTORNEY — ADVICE  OF
COUNSEL AS PROTECTION.

> In order that the advice of the prosecuting attorney may
> constitute a defense to an action of malicious prosecution,
> it must be made to appear that full and fair statement
> of all the material facts was made to him by defendant:
> failure to state any material matters may raise an issue
> of fact, sufficiently justifying the court in leaving the
> issue to the jury.[1]

4. TRIAL—CONDUCT OF COURT—ARGUMENT.

> It is the duty of the trial judge to be present and hear
> the argument of counsel to the jury, and although his
> absence may not amount to reversible error, he should
> be present and afford an opportunity to counsel to make
> objections and obtain rulings during the course of the
> argument.

5. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE.

> Defendant was entitled to have given, as a part of the
> charge, a requested instruction that neither discontinu-
> ance of a prosecution nor discharge of the plaintiff on
> his examination established want of probable cause or
> plaintiff's innocence; and a charge that such discontinu-
> ance and discharge *prima facie* established want of prob-
> able cause was prejudicial to defendant's rights.

Error to Saginaw; Gage, J.   Submitted April 28,
1913.  (Docket No. 12.)   Decided July 9, 1913.

Case by George W. Prine against the Singer Sew-
ing Machine Company and others for malicious prose-
cution.  Judgment for plaintiff.  Defendants bring
error.  Reversed.

*Weadock & Weadock,* for appellants.

*Julius B. Kirby,* for appellee.

STONE, J.  This is a suit to recover damages for
alleged malicious prosecution growing out of prosecu-
tions had upon two complaints made against the

---

[1] On the question of advice of counsel as defense to action for
malicious prosecution, see note in 18 L. R. A. (N. S.) 49.

plaintiff in the police court in the city of Saginaw by defendant Everal O. Beach, charging him with forgery and uttering forged instruments. The first count of the declaration is for malicious prosecution on account of forging and uttering as forged a sewing machine lease purporting to have been signed by F. H. Beach. The second count charges a like prosecution growing out of the prosecution for forgery and uttering as forged a sewing machine lease purporting to have been signed by A. F. Burwitz.

The declaration alleges that the prosecutions of plaintiff were instituted for the express purpose of compelling the payment of a claimed indebtedness to the defendant Singer Sewing Machine Company. This last-named defendant is a New Jersey corporation, organized on the 9th day of November, 1904, for the purpose of taking over from the Singer Manufacturing Company of New Jersey, and to conduct in that State and elsewhere, the business of selling and disposing of the sewing machines and other articles manufactured by the last-named company, and was duly licensed to carry on its business in this State. The Singer Manufacturing Company ceased to carry on business in this State on December 31, 1904.

Defendant Singer Sewing Machine Company from the time of its organization carried on its business in the State of Michigan and had a sales department or store in Saginaw, which was under the jurisdiction of Marshall M. Tatro, general agent, with an office in Chicago. This sales agency in Saginaw included the counties of Saginaw, Gratiot, Isabella, Tuscola, and Huron. Fred Schmidtill, supervising agent of said company for the lower peninsula of Michigan, had full charge of the Saginaw sales agency and had authority to discharge and did discharge the plaintiff as managing salesman on December 11, 1909. The plaintiff was employed on October 27, 1906, by writ-

ten contract, as managing salesman for the said company at Saginaw, and in this capacity to sell and dispose of its sewing machines, parts and accessories, at its store at Saginaw and in the territory attached thereto. The contract provided that said company would, as it might deem best, furnish to said store its sewing machines, parts, etc., which were to be held as the property of the company, and sold or disposed of as such by the plaintiff or those under his management, at prices established for the time being by the company for the said territory, either for cash or under agreements made upon the forms and blanks of the company. By the terms of that contract the company agreed to pay the plaintiff in full for all his services:

"A salary at the rate of $35 per week (lost time to be deducted), which shall include the use, keeping, and maintenance of a horse and wagon to be used in the business."

It was further agreed that the contract might be terminated at the pleasure of either party. A new contract was entered into on June 15, 1908. By the terms of this contract the company agreed to pay to the plaintiff in full for all his services the following compensation, subject to the limitations thereinafter expressed:

"(A) A salary at the rate of $15 per week (lost time to be deducted), which shall include the use, keeping, and maintenance of a horse and wagon, to be used in the business."

"(B) A commission of 15 per cent. of the value of each sale or lease of a machine made at said store (except on a sale or lease made by an assistant managing salesman, where such is employed) at retail list prices fixed by the company; said commission to be computed on the list price after deducting allowances (if any) for old machines taken in exchange and discounts. This commission shall be payable only as payments in cash are made on said sale or lease and

paid over to the company, and shall be at the rate of 50 per cent. of such cash payments until the full amount of commissions shall have been paid."

"(C) A remitting commission of 5 per cent. on the actual amount of money remitted from said store, said remittance to be made only from money remaining on hand after payment of the running expenses of said store and any advances from division headquarters, and is payable one week from date of each weekly report."

This contract contained the same clause as the first relating to the sale or disposal of machines at prices established for the time being by the company, either for cash or under agreements made upon the forms and blanks of the company. It also provided that the plaintiff would take proper care of and account for and deliver to the company or its authorized agent, on demand, all property of every description belonging to the company which might be intrusted to him or come into his possession or under his control. This last contract was in force at the time the plaintiff was discharged. Plaintiff gave a bond to the company, issued by the International Fidelity Insurance Company of New Jersey in the sum of $500, to secure the company against such direct pecuniary loss, not exceeding said sum, as it should have sustained of the employer's money, funds, or other personal property stolen or embezzled by said employee during and while in the actual performance of the duties of his employment as managing salesman of said employer. The plaintiff was always under bond while in the employ of the company.

There was employed in the store one Ethel M. Secord, as bookkeeper for the company. Her contract, under date of October 14, 1907, described her duties as follows:

"To act as bookkeeper for the company at its shop at Saginaw and in the territory attached thereto, and in this capacity to faithfully perform all the duties

assigned to her, and in all respects to faithfully carry out its instructions."

Her stated compensation was $9 per week. This contract was signed by Miss Secord and the defendant Singer Sewing Machine Company, by the plaintiff, as managing salesman.

Sewing machines sent to the plaintiff at Saginaw were charged to that agency, and when sent out on sale or trial a record was kept on what was known as a stock card, called "lease or note record," on one side and "stock and trial record" on the other side. On the "stock and trial record" side of the card were noted the number of the order, the date received, the number of the machine, style of machine and woodwork, name of the salesman, the date sent out, and the name of the person with whom it was on trial. The lease or note record gave at the top the number of the lease, its date, name of lessee, name of salesman, commissions paid, the terms of the contract, the price, and the dates and amounts of payment pertaining to each machine. There was a cash book kept, but no ledger; the lease or note record taking the place of the ledger.

When a machine was sold for money paid to the store, it was the claim of the defendant that there should have been no lease made, but the money should have been remitted to the Chicago office. When sold on credit, then a lease should be made, signed by the lessee, accepted by the company, by some one of its agents, witnessed, and on the back were indorsed the name of the store, the number and date of the lease, the lessee's name, the style of the machine and number, price and payments, and whom the lease was effected by, and whom examined by. That, when a machine was sold either for cash or on time, the agent making the sale made a weekly report to the Chicago

176 MICH.—20.

office entitled: "Report of ———, salesman and collector at Saginaw for week ending ———." In this report were written out the number of account or lease, the amount paid, amount selling commission retained, with other data, and said report was certified on the outside by the sales manager, giving a summary of the report and certifying that it showed all machines sold or leased, all cash collected or received by him since his last report; that the agent or managing salesman received full payment for all commission and expense item due to date; and that the cash drawn by him was in full of all demands, except commissions thereafter becoming due under the conditions of the contract of agency.

It was the claim of the plaintiff on the trial that machines put out on trial could not be left longer than one week, and that the manufacturing machines could not be left on trial at all, and the plaintiff testified that these instructions were given to him by the general agent of the Chicago office; that it was the practice of the Saginaw office, in certain instances, where machines were sold - and delivered to responsible parties, who had not, on delivery, paid for the same (as was the case in both the Beach and Burwitz sales) or given a lease covering the machine, to place in the proper files "memoranda leases," purporting to have been signed by such parties receiving the machine; that the method pointed out above by defendant covers cash sales of machines at the time of delivery, machines placed out on trial, and lease sales, but does not cover a transaction where a responsible party would order a machine and have it delivered without paying for it at the time or giving a lease therefor; that the Saginaw office had made a practice of writing up leases and placing them in the files, to make a record of the disposition of particular machines, until settlement might be had, and in many instances

parties purchasing machines would refuse to make and sign leases, and the bookkeeper would fill out these blanks, sign the name of the purchaser to the same, and file them in their proper places, to keep the record.

It appeared also that there was a cumulative report made which included all of the business for the year up to its date, and this was certified to and signed by the managing salesman and the bookkeeper. When the week-end or cumulative report was made up, the amount of money necessary to be remitted to the company would be known. The money coming to the agency at Saginaw was deposited in the Bank of Saginaw, in the name of the Singer Sewing Machine Company, generally by the bookkeeper. It was subject to check only by the plaintiff, as managing salesman, so that when the week-end report was completed, and the amount that had to be sent to the company ascertained, according to the report, if there was sufficient money in the bank, it was checked out by the plaintiff and a draft sent. If there was not sufficient money in the bank, plaintiff furnished the difference. The plaintiff testified that this did not happen often, but that it did happen, and the bookkeeper testified that that was the way in which the amounts were made up to go to the company; that in some instances, when there was not sufficient money in the bank, she was directed by the plaintiff to change the report to correspond with money on hand.

We quote the following from the direct examination of the plaintiff relating to the sales of machines to F. H. Beach and A. F. Burwitz on leases which were forwarded to the company:

"Q. Now this lease spoken of in Exhibit A, the complaint made by Beach, what was there to that within your personal knowledge?

"A. Mr. Beach ordered a sewing machine sent up to his factory, and he had bought seven or eight

others previously; he ordered this in the same way—telephoned down for a sewing machine to be sent up there and said when he got around he would send a check for it. I can't fix the date.

"*Q.* Well, the memorandum we have  *  *  * was on November 23, 1907.

"*A.* Well, it was some time previous to that when the machine was delivered. [Paper is here marked Exhibit G for identification at request of plaintiff's counsel.]

"*Q.* What is Exhibit G? '.

"*A.* It is a lease. It says F. H. Beach here.

"*Q.* What, if anything, on that piece of paper, is your handwriting?

"*A.* The witness mark, my own name, and my own handwriting, 'Geo. W. Prine.' I did not write anything else on that piece of paper. That form of lease had been used by me for the company right along. Used at every sale. I did not write the name F. H. Beach on the bottom of the lease that I was accused of forging.

"*Q.* Do you know how that came in the file or the case of the company, the Singer Company, what use was made of it, and why was it put there?

"*A.* It was sent to the company, a report of the sale of the machine to Mr. Beach.

"*Q.* And why?

"*A.* Why, to make up a certain number of sales each week that were held up for in the office, undoubtedly was reported for that purpose, as we—

"*Q.* Well, had the machine described there actually gone out of your stock?

"*A.* Yes, had previous to that, some time previous to that.

"*Q.* And at the time it went out did the cash come in to take its place?

"*A.* It did not.

"*Q.* And did the cash come in later?

"*A.* In the form of a check. [Check produced by defendants' counsel and marked Exhibit H for plaintiff.] Exhibit H is a check dated December 7, 1907. Is supposed to be a check as near as I can—

"*Q.* Well what— Is it a check for that machine of Mr. Beach's?

"*A.* Yes, sir.

"*Q.* And what was done with the check which came to the office?

"*A.* I gave it to Miss Secord and she indorsed it on the back and deposited it in the bank—credited to the Singer Sewing Machine Company.

"*Q.* And did you have any use or benefit whatever from that check?

"*A.* Never handled the check; never had it in my possession. [A contract or lease is here marked Exhibit I for identification. Check is here marked Exhibit J for identification.]

"*A.* Exhibit I is the Burwitz lease, on which I was arrested, in the second arrest. That is one of the leases that I am charged with forging. In the second case, the writing on the body of the lease is mine. Reads: 'A. F. Burwitz, Saginaw, Michigan, West Side. Saginaw 15—2—20, 1912.'

"*Q.* And the bottom part, there there is a signature, did you write the signature?

"*A.* I did not.

"*Q.* Did you write anything more in the bottom of the paper than is explained?

"*A.* No, sir; the date on there I didn't write— I didn't write '19' after 'November, 1909.'

"*Q.* What became of that; that is whether it was put through the office or the company's books or—

"*A.* I left it on the desk; I don't know what became of it afterwards; probably sent; no way of finding out whether it was sent to the company.

"*Q.* State all you know about the history of the machine in that described.

"*A.* Mr. Howell, of Detroit, who has charge of the manufacturing department for the Singer Sewing Machine Company, sells the manufacturing machines to the different factories, to the stores here; we have no right to sell a manufacturing machine—that is, machines used in a factory. I sell those then that are used in the domestic; that is it. We sold several machines, but Mr. Burwitz, you understand, from the machines we have—Mr. Howell came to the store and handed me a slip of paper, and he said: 'You deliver a machine over there to this man; he will send you a check for it.' I did— I didn't do it; I sent one of

my men over with the machine. They delivered it at the office, and that is the last I ever saw of the machine. It ran along for some time and they sent a check for the machine. That machine was taken out of our stock.

"*Q.* And what took its place?

"*A.* That report of sale that is on this lease here. Mr. Howell brought the check into the office and handed it, I think, to Miss Secord; if he didn't he handed it to me and I immediately handed it to Miss Secord. Exhibit J is the check to the best of my knowledge and is what was deposited in the Bank of Saginaw or the bank where they were doing business, by Miss Secord, to the credit of the Singer Company. The other check that was spoken of in the Beach case was deposited to the credit of the Singer Sewing Macine Company.

"*Q.* Did you ever get that back?

"*A.* No, sir; I don't think I did; I don't think I ever had it in my possession at any time after Mr. Howell handed it to Miss Secord.

"*Q.* Well, did you ever have any part of this check?

"*A.* Not one cent of it; no, sir."

Upon the trial of the case it was the claim of the plaintiff, and he gave evidence tending to show, that for a number of years before his arrests here complained of he had been the managing salesman of the defendant company at Saginaw; that he had never before been suspected of having been guilty of any crime or been arrested; that the defendant company and the defendant Fred Schmidtill were responsible for the other defendant Everal O. Beach making the complaints against him; that in the first case the defendant Beach for and on behalf of himself and the other defendants, and without any probable or reasonable cause to believe that the plaintiff was guilty or had committed the offense charged, and because plaintiff would not turn over to the other defendants a certain sum of $247 which he had collected as a representative of the said company, and the further sum of $250, and because the defendants had malice and

ill will towards plaintiff, on December 28, 1909, made the complaint in the police court aforesaid charging him with having on November 23, 1907, falsely and feloniously forged the instrument called the F. H. Beach lease, and also with having feloniously uttered and published as true said F. H. Beach lease with intent to defraud; that he was arrested and imprisoned on the warrant issued on said complaint, and that finally, upon the preliminary examination upon said charge, the case was dismissed on motion of the prosecuting attorney, and the prosecution ended; that a few days after plaintiff was so discharged the said defendant Everal O. Beach, acting for himself and under the authority of the other defendants, and actuated by the malice of himself and the other defendants, and without any reasonable or probable cause, made another complaint in said police court charging that on November 20, 1909, the plaintiff did forge and counterfeit a certain instrument, called in this case the A. F. Burwitz lease, and also with having feloniously uttered and published as true said Burwitz lease with intent to defraud; that upon the warrant issued on said last-named complaint he was arrested and taken before the magistrate, and upon the preliminary examination he was by the magistrate discharged from arrest, and the prosecution was ended.

It is the claim of the defendant Singer Sewing Machine Company that it did not authorize and was in no way connected with the prosecutions of the plaintiff; that whatever was done was under the direction of the International Fidelity Insurance Company and under the direction and supervision of the prosecuting attorney; and that it is not liable in any event. The defendants further claim under the evidence that the plaintiff was the managing salesman of defendant company during the years named; that his business was to oversee the affairs of said company; that he sold

a machine to F. H. Beach in the year 1907 for the sum of $36.61, and delivered the same to him; that at the time of the sale and delivery there was no understanding or agreement with said Beach to enter into any written lease or agreement with reference to such purchase, and that thereafter and on or about November 23, 1907, the plaintiff, with intent to injure and defraud the company, directed and assisted in preparing a lease purporting to be signed by said Beach for the sale of the machine aforesaid; that therein the purchase price of the machine was increased, the time and amounts of payments and the amount of commissions to be paid altered; that said Beach paid for the machine in full; that plaintiff did not remit the full amount paid by Beach, but only payments thereon, and those payments neither as large nor as soon as provided for in the lease; that plaintiff well knew all these facts; and that by his connection with the preparation of the fictitious Beach lease, and forwarding the same to the company's office in Chicago, he was guilty of committing the crime of forgery of said lease and uttering the same as a forged instrument. The defendants also claim that in the fall of 1909 the defendant company, through Mr. Howell, its agent from Detroit, sold a machine to A. F. Burwitz of Saginaw for the sum of $32.40, and that there was no contract, lease, or obligation to be made by said Burwitz for the machine, and that Burwitz paid for the machine in full on November 4, 1909; that on or about November 20, 1909, the plaintiff prepared a lease purporting to be signed by A. F. Burwitz, covering the sale of the machine to A. F. Burwitz; that this alleged lease was not signed by A. F. Burwitz or by his consent, knowledge, or ratification; that it changed the amount of the purchase price, the commission to be paid or earned, and the amount and time of payments on the sale; that

said lease so prepared was forwarded to the office of the defendant company, to which the plaintiff had to account, as a valid lease; and that plaintiff did not remit the amount paid by Burwitz but only a part thereof, and that this lease was forged by the plaintiff, with intent to injure and defraud, and that plaintiff was guilty of uttering the said lease as true with like intent.

The defendants claim that these facts did not come to their knowledge until the last of November or first of December, 1909; that upon the information coming to Mr. Schmidtill, from the said bookkeeper, he employed a competent person to examine the accounts in the office of the Saginaw agency and the sales of said machines to said Beach and Burwitz and found that the machines had been paid for and that no leases had ever been signed or authorized to be signed by either Beach or Burwitz and had never been ratified by either of them; that the plaintiff had admitted to Miss Secord, the bookkeeper, that he was short in his accounts with the company, which shortage included the balances due on these two leases; that Schmidtill came to Saginaw and saw the plaintiff and attempted to make a settlement of the money affairs between the plaintiff and the company, which attempt was fruitless; that plaintiff made a claim of an indebtedness due him from the company; that thereafter the defendant company reported all of the facts to the International Fidelity Insurance Company, and said last-named company directed Schmidtill to submit all the facts coming to his knowledge with reference to the alleged forgeries of the Beach and Burwitz leases to some attorney, and thereafter submit the same to the prosecuting attorney, giving the latter all material facts, and submit to and be guided by the advice of the prosecuting attorney in the premises; that thereafter Schmidtill, as directed, fully, fairly, and in

good faith stated all of the material facts with reference to said two leases to the prosecuting attorney of Saginaw county, and after such statement that officer determined that complaint should be made against the plaintiff, charging him with forging and uttering as forged the said Beach and Burwitz leases, and that upon the direction of the prosecuting attorney the complaint against the plaintiff in both cases was made by the defendant Everal O. Beach; that from the time of the statement to the prosecuting attorney, the making of the complaints, and the prosecution thereof, up to and including the final action in both of said cases, they were under the direction, advice, and control of the prosecuting attorney. The defendants further claim that the plaintiff was guilty of the offenses charged; that whatever was done by them, or either of them, was done after the material facts were fully and fairly stated to the prosecuting attorney, and without malice; and that in no event are they, or any of them, liable in this action.

The defendants made a motion for a directed verdict at the conclusion of the evidence on the grounds that plaintiff was guilty of the offense with which he was charged; that the criminal cases were commenced and conducted by the prosecuting attorney after a statement of all the material facts; that there was no evidence of malicious prosecution; and that there was no evidence that defendant Singer Sewing Machine Company authorized or had anything to do with the prosecutions, which motion was overruled and exception taken.

The defendants requested the court, by their numerous requests, to direct a verdict in their favor, which requests were not given. The case was submitted to the jury, and plaintiff had verdict in the sum of $5,783 against all of the defendants.

The defendants made a motion for a new trial on the grounds:

(1) That the court erred in overruling the motion for the defendants for a directed verdict.

(2). That the court erred in its charge to the jury.

(3) That the verdict was against the weight of the evidence.

The court denied the motion, giving reasons therefor, to which exception was duly taken. The defendants have brought the case here upon writ of error, and there are 72 assignments of error in the record. Appellants' counsel state that the law questions arise:

*(a)* Upon the rejection and striking out of evidence.

*(b)* The action of the court in denying the motion at the conclusion of the evidence for a directed verdict.

*(c)* Error in the argument of plaintiff's counsel.

*(d)* The refusal of the court to charge as requested.

*(e)* The charge as given.

*(f)* Refusal of the court to grant a new trial.

*(a)* A careful examination of this record has not disclosed to us any prejudicial error of the trial court in the rejection or striking out of evidence upon the trial or in the rulings relating to the admission of testimony. Counsel have not dwelt upon this branch of the case either in their briefs or oral arguments.

*(b)* This brings us to one of the important questions in the case. It is the claim of appellants' counsel that the court should have directed a verdict in favor of defendants upon numerous grounds. First they say that it appears by undisputed evidence that the plaintiff was guilty of both offenses of forgery and uttering forged instruments with which he was charged, and that therefore there can be no question that there was probable cause to justify prosecution in both cases. We are not prepared to say that upon this point the evidence was such as would have warranted the court in charging the jury, as matter of law, that the plaintiff was guilty of either of the offenses charged.

The intent to defraud is the gist of the offenses of forgery and uttering forged instruments as true, knowing them to be forged; and we cannot say, in the light of this record, as matter of law, that the plaintiff was guilty of either of these offenses. We think it was a question for the jury whether, under the evidence, there was probable cause to justify the prosecutions of plaintiff.

The most serious question is whether the evidence shows conclusively that the prosecutions of the plaintiff were under the direction of the prosecuting attorney, after the statement of all the material facts within the knowledge of the defendant Schmidtill. The circuit judge himself, as shown by this record, expressed doubt upon the question when the motion was made for a directed verdict upon this ground but refused to grant the motion. Our first impression was one of doubt as to the correctness of the ruling of the learned trial judge upon this question; but a more careful examination of the record has led us to the conclusion that the court did not err in denying the motion and in submitting the case to the jury upon this point.

Counsel for plaintiff, in their brief, have pointed out some 13 reasons why the statement made by defendant Schmidtill to the prosecuting attorney did not disclose all the facts. We are unable to agree with plaintiff's counsel in all of these claims, but we think there is force in the following: It appears that Mr. Schmidtill did not ádvise the prosecuting attorney that the plaintiff did not write the name of F. H. Beach upon the Beach lease, upon which the charge of forgery was based. We think it appears from the testimony that the claim was made to the prosecuting attorney that the plaintiff wrote the name of Beach, purporting to be the signature of the latter upon the lease. It turned out upon the trial that this was not

true, but it was claimed by defendants' witnesses that the plaintiff directed the signing of this name, which was as earnestly denied by the plaintiff in his testimony. The prosecuting attorney substantially stated in his testimony that he was led to believe and relied upon the statement that the plaintiff had signed the name of Beach to this lease, and that the prosecution was dismissed because the contrary appeared. It further appears that Mr. Schmidtill failed to disclose to the prosecuting attorney that in his interview with the plaintiff there had been an attempted settlement or that he had threatened the arrest of the plaintiff if he did not come to a settlement with the company. It was denied by Schmidtill that he made such threat, but the same was testified to by plaintiff, and Schmidtill testified that, had the plaintiff settled, no complaint would have been made to the prosecuting attorney; and the disclosure should have been very full upon this subject. Neither did Mr. Schmidtill advise the prosecuting attorney that there had been a practice at the agency of making what might be termed "memoranda leases," as it is claimed by plaintiff was done in this instance to keep the record in proper condition. We deem this a very material fact and one which should have been ascertained and disclosed by Mr. Schmidtill in order that the prosecuting attorney might be possessed of the facts in the case. This applies especially to the Beach case. Neither does it appear that it was disclosed to the prosecuting attorney that when the Beach sale and lease were made the plaintiff was working under a contract in which he received no commissions but a straight salary of $35 per week. This was important as bearing upon the question of intent or motive of the plaintiff.

It is urged that it is difficult to see how in any way the plaintiff would be benefited by making such a lease, as a genuine instrument, stating a larger sum

than the machine was sold for, when he would be required eventually to account for the larger sum. The condition of the two leases, when shown to the prosecuting attorney, is in dispute. It is difficult to glean from the testimony just what the witnesses mean when they testify that certain erasures were made upon these leases at or about the time they were submitted to the prosecuting attorney. It appears that subsequent to the discharge of the plaintiff these leases had been balanced so that it appeared that the whole amount due the company thereon had been paid. Just when these last entries were erased, whether before or after they were shown to the prosecuting attorney, is a subject that even counsel are not agreed upon. The presenting of those leases to the prosecuting attorney, showing that they had been balanced and nothing was due upon them, might have been a material fact, and certainly he was entitled to know all the facts relating thereto; and, if erasures had been made thereon, he was entitled to an explanation of such erasures and why made. If it should turn out that there was no probable cause for making the complaint in the Beach case, and that the same was made to force the collection of a claim, and was made maliciously, there might be foundation for this suit even if in the Burwitz case there was probable cause and the complaint properly made. These are some of the reasons that have led us to the conclusion that the court did not err in not taking the case from the jury upon that ground.

*(c)* Complaint is made of the argument of plaintiff's counsel before the jury, and the question raised presents a peculiar condition. The arguments complained of seem to have been objected and excepted to by appellants' counsel at the time, but the trial judge states in his charge that he was not present and did not hear these arguments, because he was other-

wise engaged.  A memorandum of the objections appears to have been made by appellants' counsel, and the court's attention called to the objectionable matter later, at the time of the charge, and the court instructed the jury upon the subject.  We have ruled that the circuit judge should have his attention called to objections, and he should be given an opportunity to pass upon objections to improper arguments when made; but what should be done when the circuit judge is not present to make rulings?  This presents a new question which we do not find it necessary here to pass upon, for the reason that the case must be reversed upon another ground.  But we do think we should say that in our opinion it is the duty of the trial judge to be present and in attendance and to hear the arguments of counsel to the jury, and be in a position to rule upon objections when they are made to any part of the argument.  This question will not probably arise upon a new trial.

*(d)*, *(e)*, and *(f)* may be considered together.  We have examined the charge in this case with great care, and in the main it seems to have presented the case very fully and fairly to the jury.

By the thirty-sixth assignment of error complaint is made because of the refusal of the court to give defendants' twenty-fifth written request, which is as follows:

"I charge you, as matter of law, that neither discontinuance of the *Beach Case* or the discharge of plaintiff on his examination on each of these complaints does not show want of probable cause, or that plaintiff was innocent of the offense with which he was charged."

One of the assignments of error is based on the charge of the court as given, as follows:

"Now, while it devolves upon the plaintiff to establish want of probable cause, I instruct you that, when the records were introduced here showing that he

had been discharged on each of the complaints in question, that *prima facie* established a want of probable cause on the part of the man prosecuting."

This was one of the errors urged upon the court in the motion for a new trial. Referring to the same, the learned circuit judge, in his reasons for denying the motion, said:

"This matter was brought up on the trial of the case on the motion to direct a verdict, and at that time plaintiff produced authorities from the second edition of Judge Cooley's work on Torts sustaining his position, and also some other cases which indicated that that was the rule of law. The court expressed his surprise that such could be the law and stated that it was contrary to his understanding, but, as counsel for the defendant did not produce authority to the contrary, when the court came to instruct the jury he assumed that this was the law and gave the instructions at the request of the plaintiff. A subsequent investigation satisfied the court that this was not the law in this State, and that this instruction was an error; but in view of the very full instruction given to the jury in the charge, in reference to what constituted probable cause, the court is satisfied that it was error without prejudice to the defendants."

The sixty-ninth assignment of error is based upon the refusal of the court to grant a new trial on this ground.

In *Davis* v. *McMillan*, 142 Mich. 391 (105 N. W. 862, 3 L. R. A. [N. S.] 928, 113 Am. St. Rep. 585, 7 Am. & Eng. Ann. Cas. 854), this court held that the discharge of one accused of crime has not, of itself, any tendency to show want of probable cause for instituting the prosecution. The opinion in that case was written by the late Justice HOOKER. He said among other things:

"It has been frequently held that an acquittal does not necessarily show want of probable cause. It is doubtful if the converse has ever been held; for, if it were, it would seldom be safe to institute criminal

proceedings, as conviction must always be an uncertainty under the rule of reasonable doubt, and the proceeding, being for the avowed purpose of ascertaining whether a person is guilty or not, necessarily implies a degree of uncertainty in the institution of the proceedings.   In 19 Am. & Eng. Enc. Law (2d Ed.), p. 665, the author of the subject states that some cases hold that acquittal is not alone *prima facie* or *per se* sufficient evidence of want of probable cause, and expresses the opinion that the better doctrine is that it is (alone) no evidence whatever of the want of probable cause.   *   *   *   We think it can safely be said that the weight of authority denies the rule that discharge by a magistrate upon request of the prosecuting attorney is *prima facie* evidence of want of probable cause.   *   *   *   We feel warranted in saying that the discharge of the defendant in this case has not in itself any tendency to show a want of probable cause."

We think that the doctrine of this case should be adhered to.

In the instant case it will be borne in mind that on the Beach complaint the prosecution was dismissed upon the request of the prosecuting attorney.   Notwithstanding the very full instruction given to the jury in the charge in reference to what constituted probable cause, we are constrained to hold that the error of the trial judge in the instance pointed out was prejudicial error and was not cured by the remainder of the charge, and that it is our duty to reverse the case for that reason.

We do not think the court erred in submitting the case to the jury as to all of the defendants.   We think it was a fair question for the jury whether the witness Schmidtill was acting solely for the insurance company or whether he was acting also as supervising agent of the defendant company.   Nor can we say that the action of Mr. Tatro, the general agent, in sending the witness from Chicago and furnishing

176 Mich.—21.

the documents and information from the general office was wholly in the interest of the insurance company. He had plenary power in the case. That he had such power is not denied. *Zart* v. *Sewing Machine Co.*, 162 Mich. 387 (127 N. W. 272).

We are not prepared to say that the court erred upon that portion of its charge relating to the measure of damages or that there was any reversible error other than has been pointed out.

For the error indicated, the judgment of the circuit court is reversed, and a new trial granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.