STEFANIC v. MONTGOMERY WARD & CO.

1. MALICIOUS PROSECUTION—WANT OF PROBABLE CAUSE.
   A prosecution for crime and acquittal or dismissal thereof, alone, do not make out a case, prima facie or otherwise, for malicious prosecution, it being necessary also to show a want of probable cause for institution of the prosecution.

2. SAME—BURDEN OF PROOF—WANT OF PROBABLE CAUSE.
   Plaintiff in action for malicious prosecution has burden of showing a want of probable cause on part of defendant who had caused to be filed a complaint charging plaintiff with having committed a crime.

3. SAME—WANT OF PROBABLE CAUSE—BURDEN OF PROOF—EVIDENCE.
   Plaintiff who had been charged with and acquitted of the crime of embezzlement from defendant while in its employ in credit office in receiving customer time-payments upon "lay-away" purchases held, to have failed to sustain her burden of proof of a want of probable cause on part of defendant under record presented, especially in that she failed to disclose to the prosecuting attorney facts now claimed material although afforded ample opportunity to do so.

Appeal from Washtenaw; Breakey, Jr. (James E.), J. Submitted October 13, 1959. (Docket No. 65, Calendar No. 47,852.) Decided January 4, 1960.

Case by Mary Ann Stefanic against Montgomery Ward & Co., a foreign corporation, for malicious prosecution. Judgment for defendant notwithstanding verdict. Plaintiff appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 34 Am Jur, Malicious Prosecution § 46.
[2] 34 Am Jur, Malicious Prosecution § 124.
[3] 34 Am Jur, Malicious Prosecution § 153.

*Conlin, Conlin & Parker* and *Mann, Lipnik & Darrow* (*John W. Conlin, Peter P. Darrow* and *Richard J. Mann*, of counsel), for plaintiff.

*Hooper & Blashfield* (*Albert E. Blashfield*, of counsel), for defendant.

BLACK, J.   Plaintiff sued defendant in the Washtenaw circuit for malicious prosecution. The case was tried to a jury. Defendant's motion for directed verdict, assigning no proof of want of probable cause and due reliance on advices of the county prosecutor following disclosure to the prosecutor of all material facts, was reserved for decision. The jury returned a verdict for plaintiff and assessed her damages at the sum of $23,000. On defendant's motion, the trial judge set aside the verdict and entered judgment for defendant. Plaintiff appeals.

Plaintiff originally was employed by defendant as a saleslady in defendant's Ann Arbor retail store. About a year later she was transferred to the credit office of the store, where she was charged with receiving and receipting customer time-payments and customer deposits and payments upon "lay-aways." The latter are known in the record as "will-call" accounts.

Plaintiff's employment in the credit office started September 7, 1948, and continued until January 29, 1949. On the latter date plaintiff was advised by the store manager that a shortage in the "will-call" account had been discovered and that an investigation was under way. The investigation at first centered around a Mrs. Printz, manager of the credit office. As it progressed plaintiff became involved. Details of the investigation are many. They need not be recounted beyond observation that the work was done thoroughly, at first by defendant's auditor and finally by the prosecuting attorney's office with

specially assigned assistance of the Ann Arbor police department. Plaintiff willingly assisted the auditor and officers and, with Mrs. Printz, submitted to a lie-detector test at State police headquarters. She and Mrs. Printz ultimately and separately were informed against for embezzlement, defendant's said manager having signed the complaint against plaintiff. Mrs. Printz pleaded guilty. After examination in the municipal court of Ann Arbor, the charges against plaintiff were dismissed.

Validity of defendant's motion for directed verdict is the sole issue before us. Was there proof or inference from proof which, tested by rules governing the right of action for malicious prosecution, would justify a verdict for plaintiff? At the outset we note that Michigan is one of the States which became and remains committed to the rule that prosecution and acquittal—or dismissal—alone do not make out a case, prima facie or otherwise. The rule was adopted first in *Davis* v. *McMillan*, 142 Mich 391 (3 LRA NS 928, 113 Am St Rep 585, 7 Ann Cas 854)* and followed in *Prine* v. *Singer Sewing Machine Co.*, 176 Mich 300, 320, 321. We approach consideration of this case accordingly.

Here the question of want of probable cause is necessarily intertwined with the affirmative activity of the prosecutor's office and plaintiff's participation therein. Upon presentment, to that office by defendant, of a mass of manifestly material facts pertain-

---

* The authorities in other States were considered at length in *Davis*. The conclusion reached is fairly illustrated as follows (p 396):

"A more rational rule is that an act, not that of the defendant, cannot be evidence to bind him. He is not a party to the criminal proceeding, can offer no evidence to influence the magisterial conclusion or decision, and the rule laid down in the case of *Apgar* v. *Woolston*, 43 NJL 57, 61, commends itself to us, *viz.*, that a discharge not brought about by the procurement of the defendant, nor attended by circumstances involving the conduct of the defendant which of themselves indicate a want of probable cause, is no evidence of a want of probable cause."

For an up to date annotation of the question see 68 ALR2d 1168.

ing to the probability of guilt of plaintiff as well as Mrs. Printz, the prosecutor undertook his own independent investigation and proceeded to interview —at length and repeatedly—plaintiff and Mrs. Printz as well as defendant's representatives. The apparently damning documentary evidence was carefully examined and reviewed with plaintiff. Aided by detective Krasny, of the police department, the prosecutor pursued the inquiry by looking up nearly all of the involved "will-call" customers to ascertain the amounts each had paid in at the credit office to plaintiff per receipts which appear to have been made out and signed by her. Plaintiff admitted to the prosecutor that each receipt had been made out by her or that "it looks like my handwriting." Twenty-four "will-call" payments were represented by these receipts, the dates of which extended from September 23, 1948, through December 24, 1948, and it was principally on account of these receipts and the shortages represented thereby that the prosecutor decided to act against plaintiff. He testified:

"Well, my memory of it would just be in substance this—that she said that these records weren't reconcilable—that they were inconsistent—that they showed that some money had been taken that belonged to the company—to Montgomery Ward. And I questioned her at quite some length on that. She said that she didn't take the money but that she couldn't explain the records; that she couldn't say that she didn't make these records herself; that the records resembled—  *  *  *

"And I said to her, 'Well unless you have some suggestions, I don't know of anything further either. But you insist that you didn't take it and if that were true, then somebody else must be responsible and you are familiar with how the system works, you are acquainted with the people in the store, and you are in a better position than I to know what to look for.' And she said she didn't know what further

investigation could be made but it was just that she hadn't taken the money. And we discussed that for quite some time. I specifically asked her if there were any questions that she wanted me to ask Mrs. Printz, and she said, 'No.' I then asked her if she would like to question Mrs. Printz, and I asked her that when Mrs. Printz was present and also when she was not present, and she said, 'No' and that she had no questions to ask her. I said, 'Well, I am at a loss to explain this. It just indicates to me that you must be the responsible person for taking the money unless these records can be explained. She said she couldn't explain it and didn't know what to do, didn't know what to tell anyone to do, and that the records were inconsistent and did indicate a shortage, and that she didn't take the money. * * *

"One more thing—I told her that in that circumstance I would feel it my duty to authorize a warrant charging her with the offense and that if there was anything that could explain this that this was the time to do the investigation on it, and she said that she didn't blame anyone for thinking on the basis of the records that we had that she had taken the money. She said it looked as though she had taken it, but all she could say was that she hadn't. And she said—I asked her if she could see any way that I could properly discharge my duty and not authorize such a warrant without this being explained, and she said that she didn't know what my duty was but she could see that in this circumstance it indicated it looked as though she had taken the money and she wouldn't blame anyone for thinking she had, and whenever it was necessary that she be charged with the offense that there was nothing that she could do about it—that it looked as though she had done it. But she said, 'I didn't take the money.' "

Plaintiff testified, and maintained throughout the course of the investigation and the present trial, that she had taken none of defendant's money. She conceded that the mentioned receipts and the fact of the

corresponding "will-call" shortages "make it look bad" for her. She testified candidly that she did not blame defendant's representatives for concluding that she had taken the money represented by such receipts. Bearing as she did the burden of proving an actionable want of probable cause, plaintiff's own testimony negatives the case made by her declaration and so fully justified and now justifies Judge Breakey's order for judgment. The reason is that plaintiff is not on present trial. Her guilt or innocence is of no moment. The only question is whether she has made out a case of want of probable cause against defendant and there she has failed.

But, says plaintiff, defendant omitted disclosure to the prosecutor of *all* of the material facts which, collectively, might have led the prosecutor to pause. The trouble with this contention—assuming without deciding that some material facts were not disclosed by defendant to the prosecutor*—is that plaintiff herself was given ample opportunity to make due disclosure of the same allegedly withheld facts and did not see fit to do so. She had timely knowledge of all items of allegedly material nondisclosure and, having voluntarily participated in the prosecutor's investigation with invitation on his part to help out, so to speak, the effort of his office to reach a correct decision, is in no position to complain that defendant omitted that which she herself must at the time have felt was quite immaterial or unsubstantial. The question of claimed nondisclosure is thus controlled by *Merriam* v. *Continental Motors Corp.*, 339 Mich 546.

---

* The trial judge held, we think rightly on the face of this lengthy testimonial record, that such "omission" was not "any material omission sufficient to warrant this case to proceed." He did not elaborate, yet his opinion makes obvious the belief that plaintiff, if she believed such "omissions" of moment, could and should have disclosed them to the prosecutor herself. Plaintiff thus has placed her own brand of immateriality on the items she says defendant should have disclosed.

Plaintiff did not sustain the burden of making out a case against defendant. The judgment of the trial court is therefore affirmed, with costs to defendant.

Dethmers, C. J., and Carr, Kelly, Edwards, Voelker, and Kavanagh, JJ., concurred.

Smith, J., did not sit.