MERRIAM v. CONTINENTAL MOTORS CORPORATION.

1. Malicious Prosecution—Advice of Attorney—Probable Cause —Malice.

Plaintiff in action for malicious prosecution was not entitled to limit defendant's defense that the warrant for plaintiff's arrest was based on the prosecuting attorney's advice and the police department's independent investigation, where defendant's answer and amended answer denied plaintiff's averment that defendant put plaintiff under arrest maliciously and without probable cause, such were insisted on by defendant in motion at the close of plaintiff's proofs, in defendant's requests to charge, in the court's opinion on motion granting judgment notwithstanding the verdict and in defendant's brief in the Supreme Court.

2. Same—Probable Cause—Evidence.

Probable cause for plaintiff's arrest for larceny of defendant's carburetors *held,* to have been persuasively shown by plaintiff's own admissions and testimony of his witnesses that was undisputed and a showing of failure on part of plaintiff who had previously worked for defendant as a tool trouble man to show that he had advised defendant's officers that he had been told by one of its employees that the carburetors were junk and needed to be experimented with as claimed by plaintiff as the reason for his possession of them when found by defendant's plant protection men.

3. Same—Malice—Evidence.

Inference of malice sufficient to sustain action for malicious prosecution *held,* under the circumstances, not shown by report of defendant's plant protection officer as to conversation

References for Points in Headnotes

[1, 8]  34 Am Jur, Malicious Prosecution §§ 72, 75.
[1, 8]  Reliance on advice of prosecuting attorney as defense to malicious prosecution action. 10 ALR2d 1215.
[2]  34 Am Jur, Malicious Prosecution §§ 50, 51.
[3, 4]  34 Am Jur, Malicious Prosecution § 121.
[5]  34 Am Jur, Malicious Prosecution § 6.
[6]  34 Am Jur, Malicious Prosecution § 47.
[7]  34 Am Jur, Malicious Prosecution § 161.

had with plaintiff as he was found with some of defendant's property in his possession which is claimed to have differed somewhat from plaintiff's statement.

4. Same—Malice—Evidence—Reputation.

The failure of defendant corporation whose plant protection men apprehended plaintiff with some of its property on his person to report to the police on plaintiff's record or reputation did not constitute evidence of malice under the circumstances where, had such report been made, it could have disclosed that previously plaintiff had been convicted of stealing, and sentenced therefor.

5. Same—Probable Cause—Malice.

It is necessary to show in an action for malicious prosecution that the alleged prosecution has terminated in plaintiff's favor, that defendant had no probable cause and had acted from malicious motives.

6. Criminal Law—Probable Cause—Definition.

Probable cause for a criminal prosecution is a reasonable ground for suspicion, supported by circumstances sufficiently strong to warrant a cautious or prudent man in the belief that the party is guilty of the offense with which he is charged.

7. Malicious Prosecution—Want of Probable Cause—Undisputed Facts—Question for Court.

The want of probable cause is a question of law to be determined by the court, in an action for malicious prosecution, where the facts are conceded or undisputed.

8. Criminal Law—Probable Cause—Advice of Prosecuting Attorney.

Probable cause for causing a criminal prosecution may be established by a complaining witness, where he has in good faith fully and fairly stated all of the material facts within his knowledge to the prosecuting officer and acted upon his advice.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 9, 1954. (Docket No. 51, Calendar No. 45,874.) Decided June 7, 1954.

Case by Duncan Merriam against Continental Motors Corporation, a Virginia corporation, for malicious prosecution and false imprisonment.

Verdict for plaintiff set aside and judgment notwithstanding verdict entered for defendant. Plaintiff appeals. Affirmed.

*U.S.A. Heggblom,* for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy (Philip T. Van Zile,* of counsel), for defendant.

REID, J. Plaintiff appeals from a judgment for defendant notwithstanding the verdict, rendered in circuit court. Plaintiff sued for damages for malicious prosecution and false imprisonment; the verdict of the jury was for plaintiff for $5,000 damages. In April, 1947, plaintiff was arrested for simple larceny on complaint of Mr. Wing, officer of defendant in charge of plant protection, and was later tried and acquitted. This action was begun August 23, 1948, and was dismissed for no progress, March 1, 1950; on September 13, 1950 the order of dismissal was vacated and the cause reinstated.

In 1947, the defendant Continental Motors Corporation, hereinafter referred to as CMC, owned and operated a large, 3-story building in Detroit. March 1, 1947, defendant CMC leased a part of the building to Kaiser-Fraser Corporation, referred to hereafter as K-F, for manufacture of automobile engines. A number of CMC's employees were transferred to the employment of K-F, among them plaintiff, Merriam, on March 19, 1947; he had worked for defendant CMC as "tool trouble man" by the hour, and was assigned the same kind of work by K-F. The defendant CMC retained a large part of the building for its own operations, including the entire third floor where the department "AA-7" was used by defendant for the manufacture of small engines used for bicycles, et cetera, which had nothing to do with K-F's operations on larger engines. Defendant's

plant protection department had received reports of considerable loss of small parts in the AA-7 department.

About midnight, Saturday, April 5, 1947, no one was on the third floor except 2 or 3 maintenance electricians doing their work while the plant was closed down. K-F was operating that night in its part of the building. Two of defendant's plant protection men, Sgt. Collins and officer Porter, came to the department AA-7 and as they stood there, plaintiff Merriam and one Heiden came out of the AA-7 stockroom walking toward Collins and Porter; plaintiff Merriam was carrying 2 AA-7 carburetors in his hands. The plant protection men stopped them and asked them who they worked for; plaintiff Merriam told him "Continental." Collins asked to see his badge and plaintiff then told him, "I work for K-F." The plant protection officers then asked what plaintiff was doing with the carburetors and plaintiff said he was taking them for experimental purposes and was going to do the experimenting himself. Plaintiff Merriam testified, "The carburetors could not be used on K-F engines. I knew when I went to the third floor that I was on CMC property and that the carburetors belonged to CMC." Plaintiff Merriam did not offer to the plant protection men any excuse or reason for being there other than he wanted the carburetors for experimental purposes. The plant protection men Collins and Porter took the carburetors from plaintiff Merriam and escorted plaintiff and Heiden to the K-F plant protection office and turned them over to that office, which did not cause plaintiff's arrest, but temporarily suspended plaintiff from employment at K-F.

On Monday, April 7, 1947, a report by Sgt. Collins dated April 5, 1947 (exhibit No 10 in the record) was submitted to Mr. Raven, vice-president in charge of the plant protection department of defendant, and

the report was discussed with the plant protection chief, Mr. Wing, who under instructions of Mr. Raven, contacted Detroit police; the police made their own investigation and on the back of the report as written by the police, the assistant prosecuting attorney indorsed his authorization of the issuance of a warrant for plaintiff's arrest.

In plaintiff Merriam's brief, there is the following statement:

"In the answer and amended answer to the plaintiff's declaration, the defendant attempts to justify the arrest and prosecution on the following grounds:

"No 1. That the defendant did make a full and complete statement to the prosecuting officials of all facts relating to the alleged charge, and

"No 2. That the arrest was solely on the basis of the independent investigation by the Detroit police department.

"The statements of questions involved are therefore narrowed to these 2 issues."

Plaintiff limits his questions involved accordingly.

However, the answer and amended answer of defendant denied the statement in the declaration that the defendant "maliciously and without probable cause" put plaintiff under arrest. Want of malice and existence of probable cause were insisted on by defendant in motion at close of proofs, in defendant's requests to charge and were emphasized in the court's opinion on motion for judgment notwithstanding the verdict, and are insisted on in defendant's brief in this Court. Plaintiff Merriam is plainly wrong in his attempt to limit the defense to the prosecuting attorney's advice and the police department's independent investigation.

Defendant insists in substance on the following as shown largely by plaintiff Merriam's own admissions, by statements of plaintiff's witnesses or other testimony undisputed:

1. That plaintiff and Heiden were not employed by defendant and had been discovered on defendant's property with defendant's carburetors in their hands;

2. That they were discovered on a Saturday night about midnight when defendant's plant was shut down and the department where they were found was not operating.

3. That plaintiff when questioned at that time, first said he worked for defendant, and when asked for identification changed his story and said he worked for K-F.

4. That the 2 men were not employees of defendant but were employees of K-F and the carburetors were not connected with nor usable by K-F.

5. That the 2 men had no written authority to be on defendant's premises or to have defendant's carburetors in their possession.

6. That neither plaintiff Merriam nor Heiden offered any reason or excuse for their being where they were discovered nor for having the carburetors in their possession other than that Merriam wanted the carburetors for his own experimentation. (Plaintiff testified, "I said I was going to do the experimenting myself.")

7. That plaintiff Merriam was given a penalty by K-F for being off K-F property, that is, he was laid off for 2 weeks and did not appeal from that penalty, to the labor relations full committee.

8. That the Detroit police, at defendant's request, made an investigation of their own, had filed a report substantiating the facts as defendant understood the facts, and the recommendation of the assistant prosecuting attorney was indorsed on the police report.

The foregoing 8 statements (claims of defendant) are practically undisputed in the record. To these, we may add that it is worthy of note that plaintiff

Merriam did not before his arrest claim to any person connected with the defendant corporation, nor to any other person, so far as the record shows, that Schaefer, a tool trouble man of defendant CMC, had told Merriam he wanted Merriam to get the carburetors, nor that the carburetors were worthless junk.

The undisputed facts in this case, very persuasively indicate probable cause. The above-quoted statement of defendant, "I said I was going to do the experimenting myself," in view of undisputed surrounding circumstances, is highly indicative of guilt, and plaintiff sought on his trial for larceny to explain it away, by saying that Schaefer told him to get the carburetors. If this later statement is actually true, plaintiff Merriam has nobody to blame but himself for that fact not being known to defendant's officers before the warrant for arrest of Merriam was sworn out. He simply did not tell them that claimed fact, with the result that they did not have any such claimed fact in mind when the warrant was sworn out.

Plaintiff Merriam defines his duties as tool trouble man as follows:

"I was employed by CMC from 1943 until I left as a 'tool trouble' man which took me over the entire plant diagnosing and correcting trouble with tooling, dies and fixtures. When I went to work for K-F March 19, 1947, I did the same type of work."

Nowhere in the record either in the testimony of plaintiff nor that of any other witness is it set forth that plaintiff's duties included experimenting with units manufactured by some other manufacturer, as was the case with the carburetors in question.

We note that Schaefer was an employee of defendant CMC as a tool trouble man, on hourly basis, and that defendant CMC had no need, as sworn to by

Schaefer's superior, for any experimental work to be done by CMC on the carburetors, but if found defective, the carburetors would be returned to the concern which had furnished the carburetors to CMC; and further it is of importance to have in mind that the officers of CMC had a right before determining to report defendant to the police, to consider in their own plant all that threw light on the situation as to the carburetors in question, and further to consider that plaintiff Merriam had not even claimed to any one of the employees or officers, Collins, Porter, Wing, or Raven so far as the record shows, that the carburetors were junk or valueless, or needed to be experimented with by plaintiff, before the officers of CMC determined to report plaintiff to the police.

Plaintiff Merriam argues somewhat obscurely, that there is proof of malice in that Collins' report says, "I asked whether he was doing this for K-F and he said, 'No, for myself,'" whereas plaintiff Merriam testified, "I said I was going to do the experimenting myself." Plaintiff would infer there is sufficient difference to be evidence of malice on the part of Collins in so reporting. We think this variance insufficient as evidence of malice on the part of Collins or any other officer of defendant. There is no showing in the record that on April 5, 1947, nor at any time before plaintiff's arrest, either plaintiff or Heiden ever directed the attention of any person connected with defendant's plant protection, to any claim that the carburetors in question were "scrapped"; yet plaintiff argues that because plaintiff's witness Hunter testified that he was informed by night shift steward Wilcox of the second shift when the incident occurred that the carburetors were "scrapped," in some way inference of malice on the part of defendant is evidenced because defendant's plant protection officers considered the case

worthy of being brought, charging plaintiff with petty larceny. We consider such inference unsupported.

Plaintiff Merriam further argues malice from the fact that defendant did not disclose to the police, plaintiff's past record and "excellent reputation;" but the record does not disclose that defendant's employees and officers who investigated this case, knew in exact detail, plaintiff's record or reputation; but if they had known his record and reputation the record further shows his own testimony that on October 2, 1933 he was convicted of stealing gasoline and sentenced to 30 days in the Detroit House of Correction. We are not convinced that the failure of defendant to report to the police on plaintiff's record or reputation, is evidence of defendant's malice.

There is no showing in the record of defendant's actual or implied malice.

"We have repeatedly held that in order to maintain a suit for malicious prosecution, it must be established: (1) The fact of the alleged prosecution that has come to a legal termination in plaintiff's favor; (2) that the defendant had no probable cause; (3) that he acted from malicious motives." *Turbessi* v. *Oliver Iron Mining Co.*, 250 Mich 110, 112 (69 ALR 1059).

"Want of probable cause is thus the very gist of the action." 34 Am Jur, pp 730, 731, Malicious Prosecution, § 46.

"Probable cause for a criminal prosecution has been defined as a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious, or as some courts put it, a prudent, man in the belief that the party is guilty of the offense with which he is charged." 34 Am Jur, p 731, Malicious Prosecution, § 47.

"It is the settled rule in this State that where the facts are conceded, or are undisputed, the want of probable cause is a question of law to be determined by the court." *Thomas* v. *Bush,* 200 Mich 224, 227. See cases there cited.

The trial judge found that there was no malice shown to have actuated the defendant and that there was a failure on the part of the plaintiff to show want of probable cause. The trial judge further found that the defendant proved ample probable cause for its conduct. We concur in these findings by the trial court.

There is, further, practically undisputed testimony to show that defendant fully and fairly disclosed the facts within the knowledge of its officers and employees, to the police; that the assistant prosecuting attorney took the independent investigation and report thereof by the police, as the basis for his recommendation for a warrant, and that Mr. Wing acted on the assistant prosecuting attorney's recommendation in signing the complaint.

In *Doak* v. *Springstead,* 284 Mich 459, we say at page 461:

"In *Smith* v. *Tolan,* 158 Mich 89, we said (p 93):
" 'It is the settled law in this State in actions for malicious prosecution and false imprisonment that, where a prosecuting witness has in good faith fully and fairly stated all of the material facts within his knowledge to the prosecuting officer and acted upon his advice, proof of the fact establishes a case of probable cause. *Rogers* v. *Olds,* 117 Mich 368; *Doty* v. *Hurd,* 124 Mich 671, and cases cited.' "

The record in this case fairly supports the conclusion as a matter of law, of probable cause. Other grounds set forth as a defense need not be decided.

The judgment for defendant is affirmed. Costs to defendant.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.