KOSKI v VOHS

Docket No. 75140. Argued January 15, 1986 (Calendar No. 17).
Decided November 10, 1986. Rehearing denied 428 Mich 1201.

Aldred E. Koski brought an action in the Oakland Circuit Court
against Danny R. Daniel, an investigator for the Oakland
County Prosecutor, several officers of the Madison Heights
Police Officers Association, and the Oakland County Prosecutor,
alleging malicious prosecution for larceny by conversion involv-
ing advertising revenues paid to him as agent for Monitor
Publications, Ltd., publisher of an MHPOA magazine. The court,
Robert C. Anderson, J., directed a verdict for the defendants,
finding that as a matter of law they had probable cause to
initiate the prosecution. The Court of Appeals, HOOD, P.J., and
BEASLEY, J. (CAPRATHE, J., concurring in part and dissenting in
part), affirmed except as to Daniel, ruling that the question
whether Daniel had probable cause to instigate the prosecution
was for the jury, and remanded for a new trial (Docket No.
69982). The defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice
WILLIAMS and Justices BRICKLEY and RILEY, the Supreme Court
*held:*

The trial court correctly determined as to all defendants that
the plaintiff failed to prove the element of lack of probable
cause.

1. In an action for malicious prosecution, absent a dispute of
fact, the question of probable cause is a question of law to be
determined by the court. In this case, although the Court of
Appeals found that there was a disputed question of fact as to
whether the plaintiff had a claim of right to the advertising
revenues, it was undisputed that Mr. Daniel had knowledge of
the plaintiff's claim. Thus, the issue of probable cause was a
question of law to be determined by the court on the basis of

REFERENCES

Am Jur 2d, Malicious Prosecution §§ 50-55, 184-186.

Accused's release of liability, or stipulation that there was probable
cause for criminal charge, in consideration of termination of
prosecution as precluding malicious prosecution action. 26
ALR4th 245.

what Mr. Daniel ascertained during his investigation. The trial court correctly found that the evidence presented by the plaintiff was not adequate to prove the element of lack of probable cause.

2. The standard for determining whether probable cause existed involved only consideration of the conduct of a reasonable man under the circumstances, not a finding that there was a specific intent to commit the crime beyond a reasonable doubt. Where, as in this case, there are sufficient facts to warrant a prudent person under the circumstances to believe that a crime had been committed and that the accused committed it, failure to conduct further investigation does not negate probable cause.

Chief Justice WILLIAMS, concurring with Justice BOYLE, wrote separately to question whether the trial court correctly exercised its discretion in granting a directed verdict for the defendant.

Reversed.

Justice LEVIN, joined by Justices CAVANAGH and ARCHER, dissenting, stated that the Supreme Court should not decide, viewing the question of probable cause as one of law, whether there was probable cause until after the trial court and the Court of Appeals have reviewed the record for that purpose. In this case, neither the trial court nor the Court of Appeals so reviewed the record, and the Supreme Court should not bypass decision by the trial court and the Court of Appeals on the issue. Rather, it should remand the case to either court for a determination whether, on the record, there was probable cause. Only after such an assessment should the Supreme Court consider whether further review is warranted.

It is of considerable importance for purposes of a civil action for malicious prosecution whether a person has probable cause to initiate a criminal prosecution if a prudent person would believe that the person to be prosecuted probably or has committed a crime, or whether the person must additionally correctly or reasonably believe that he is sufficiently informed as to the law and facts to justify initiating prosecution. It is not correct to say or suggest that where, as in this case, there is evidence sufficient to show that the requisite acts constituting a criminal offense have probably been committed by the accused and there is contradictory evidence concerning the accused's defense further investigation is not required.

Defendant Daniel was not sufficiently informed of the law to justify him initiating prosecution of the plaintiff unless advised to do so by counsel after full disclosure of the facts within his

knowledge and *information. Without* such advice, he could not have acted as a prudent person and did not have probable cause to initiate the prosecution. Whether he made full disclosure of all the facts was a question for the jury.

137 Mich App 491; 358 NW2d 620 (1984) reversed.

OPINION OF THE COURT

MALICIOUS PROSECUTION — PROBABLE CAUSE — QUESTIONS OF LAW.

In an action for malicious prosecution, absent a dispute of fact, the question of probable cause is a question of law to be determined by the court.

*James Paterson* for the plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*) for the defendant.

BOYLE, J. In this case we are asked to decide whether the trial court correctly determined that the plaintiff had not proven the element of lack of probable cause in this malicious prosecution suit. As the Court of Appeals noted, "[t]he basis for the trial court's ruling was a finding that as a matter of law defendants had probable cause to initiate criminal prosecution against plaintiff." We find that this determination was correctly made by the trial court as to all defendants, and we reverse that portion of the opinion of the Court of Appeals which had remanded the case for a jury determination of this question.

Basically, the record in this case reveals the following facts. Aldred Koski, as agent for Monitor Publications, Ltd., entered into a contract with the Madison Heights Police Officers Association to publish a police magazine. The contract provided that advertisements would be sold to local businesses and that all advertising revenues would be deposited in the MHPOA account. Mr. Koski would then be paid a certain amount for expenses and a share of the profits (see n 6).

Approximately two years later, several Madison

Heights police officers met with the Oakland County Prosecutor's Office to discuss allegations that Mr. Koski was converting checks made out to the MHPOA. An investigation was undertaken by Mr. Danny Daniel of the prosecutor's office and charges were later authorized. At the preliminary examination, Mr. Koski was discharged when the Secretary-Treasurer of the MHPOA failed to appear to testify.

Mr. Koski began the instant suit for malicious prosecution against seven defendants: five Madison Heights police officers, the Oakland County Prosecutor, and Mr. Daniel. At trial, after the plaintiff had completed his proofs, the court granted defendants' motion for a directed verdict, finding as a matter of law that defendants had probable cause to initiate criminal prosecution against Mr. Koski.[1]

Mr. Koski appealed to the Court of Appeals which affirmed as to all defendants except Mr. Daniel. It then remanded to the trial court for a new trial as to the remaining defendant. We granted Mr. Daniel leave to appeal.

It is well-settled in this state that, in a malicious prosecution action, absent a dispute of fact, the question of probable cause is a question of law to be determined by the court. *Modla v Miller,* 344 Mich 21; 73 NW2d 220 (1955); *Baker v Barach,* 197 Mich 219; 297 NW 472 (1941). The Court of Appeals in this case found that there was a disputed question of fact as to whether Mr. Koski had a claim of right to the funds and, on this basis, concluded that it became a question for the jury whether Mr. Daniel had probable cause to believe

[1] The trial judge's statement that "I do not think that reasonable minds could differ in this" did not mean that he had determined that the question of probable cause was one for the jury. Rather, he was noting that the facts surrounding the issue of probable cause were not open to dispute and that, therefore, the question of probable cause could properly be determined by the court.

that the plaintiff had committed an offense.[2] It was undisputed, however, that Mr. Daniel had knowledge of Mr. Koski's claim.[3] Therefore, the issue of probable cause in this case was a question of law for the judge to be determined on the basis of what Mr. Daniel ascertained during his investigation.[4] Prosser & Keeton, Torts (5th ed), § 119, p 876. The record reflects that at the time Mr. Daniel was authorized to request a warrant, he had taken the following steps and developed the following facts.

Mr. Daniel met initially with Assistant Prosecutor Richard Thompson, Madison Heights Chief of Police Joseph Whitefield, MHPOA President Kenneth Vohs, and two other police officers to discuss allegations that Mr. Koski was converting funds to his own use. Mr. Daniel was advised that the contract between the MHPOA and Mr. Koski provided that all advertisement revenues were to be paid to the MHPOA and that MHPOA was then to pay Mr. Koski's expenses and a profit, if any, of seventy percent of all monies received after the first $5,000. He then interviewed Elsie Keil, secretary to the Chief of Police, who stated that Mr. Koski had picked up checks made out to the MHPOA and that she had only given them to him after Lieutenant Sloan, who was not authorized to

[2] It must be noted that the issue of probable cause is not dependent on whether or not Mr. Daniel made a full and fair disclosure to the prosecutor. If Mr. Daniel had probable cause to believe that Mr. Koski had committed an offense, it is immaterial whether he made a full disclosure. As the Court of Appeals correctly noted, the question of a full and fair disclosure to an attorney is only relevant to an inquiry into whether a complainant is immunized from suit, *even if* there was no independent basis for finding probable cause. *Modla v Miller; Baker v Barach, supra.*

[3] Mr. Koski asserted his claim to Mr. Daniel regarding his right to endorse and cash checks and use the advertising money for expenses during Mr. Daniel's investigation of the complaint.

[4] The Court of Appeals appears to have incorrectly based its conclusion on the issue of probable cause on what was ascertained at trial regarding the situation, rather than the facts at the time of the investigation.

release the checks, ordered her to do so. Mr. Daniel subsequently interviewed Richard Jackson of Spalding, DeDecker & Associates who stated that a man described as sixty years old, small frame with gray hair, had entered his office and requested payment for an advertisement in the Monitor magazine. Mr. Jackson further stated that, when he pointed out that the invoice required checks to be made out to the MHPOA, the person identified himself as Dennis Carley and suggested that it be made out to Monitor/MHPOA. Mr. Daniel then talked to Dennis Carley, the Secretary-Treasurer of the MHPOA who stated that he routinely paid Mr. Koski from monies received and under no circumstances was Mr. Koski authorized to have any money from the advertisements without it first being deposited in the association account. Officer Carley showed Mr. Daniel the record books, and Mr. Daniel instructed him to balance all names of advertisers listed in the magazine against those who had paid the association and provide a list of those who were in the magazine but for whom there was no record of payment to the MHPOA. Mr. Daniel then received a list of eight checks.

After receiving the list, Mr. Daniel interviewed the manager of Howard Johnson's who stated that he had not paid because he never authorized the advertisement. Mr. Daniel then talked to Tony Brenza, the General Manager of Oakland Dodge, Inc., who produced a cancelled check for $420 made payable to the MHPOA and endorsed by Mr. Koski. Mr. Brenza stated that the check would not have been written until the requesting agency arrived to pick it up. Thereupon, Mr. Daniel talked to Edward Hellner, the comptroller, who verified his signature, and to George Hensely, the Sales Manager, who identified a picture of Mr.

Koski as the man who had made the request for the check.

Mr. Daniel then obtained a search warrant authorizing a search of all bank accounts for Monitor magazine at Michigan National Bank. This search turned up the fact that the $100 check from Spalding, DeDecker & Associates was not deposited in either the MHPOA account or the Monitor account, but cashed for Mr. Koski by Rick Dowell, one of the tellers.

Lieutenant Gerald Sloan was then interviewed, and he stated that he had known Mr. Koski for ten years, had filed corporation papers for Mr. Koski, and had named himself as resident agent because a permanent address was needed. Lieutenant Sloan further stated that he only authorized the release of checks because Mrs. Keil had read the address on the envelopes to him on the phone and they were addressed to the Monitor magazine. Mrs. Keil was again interviewed and denied that she had read the envelopes to Lieutenant Sloan, and, further, she again verified that they were addressed to the MHPOA.

Mr. Daniel next interviewed Rick Dowell, the bank teller who had cashed the Spalding, DeDecker check, who stated that he thought it was unusual that Mr. Koski was cashing checks for the police department, but that he had assumed it was all right because Mr. Koski was friends with the bank manager.

Later, Mr. Daniel requested an audit of the MHPOA books and interviewed Mr. Koski informally and then formally, with Mr. Koski's attorney, in the prosecutor's office.

As this Court stated in *Clanan v Nushzno,* 261 Mich 423, 427; 246 NW 168 (1933):

When the material facts are undisputed and in

the opinion of the court constitute probable cause,
he should direct a verdict in favor of the defen-
dant. When the facts are in dispute, the question
is for the jury with instructions as to what consti-
tutes probable cause.

"The general rule of the common law, sustained
by the overwhelming weight of authority, both in
England and America, is that what facts, and
whether particular facts, constitute probable cause
is a question of law, which the judge must decide
upon the facts found to exist in the particular
case, and which it is error of him to submit to the
decision of the jury." 18 RCL § 39, p 58,

and, as was reiterated in *Drobczyk v Great Lakes
Steel Corp,* 367 Mich 318, 325-326; 116 NW2d 736
(1962):

Inasmuch as there was no dispute as to the
material facts in the case the question whether
plaintiff had sustained the burden of proof on the
issue of want of probable cause was a *question of
law for the court.* [Emphasis added.]

Justice LEVIN relies on *Thompson v Price,* 100
Mich 558; 59 NW 253 (1894), for the proposition
that the instant case should properly have been
submitted to the jury to determine the question of
probable cause. However, in *Thompson* there was
a factual dispute as to whether or not the defen-
dant had talked to the only person with knowledge
of the facts. As this Court stated, in upholding a
jury verdict for the plaintiff,

[T]he testimony of the defendant is that he
talked with Mr. Enos upon the subject, and that
Mr. Enos told him that plaintiff did not ask for
any statement of his (Enos') taxable property, and
the defendant testifies that he communicated this
to the prosecuting attorney. . . . But, as before
stated, Mr. Enos testified that, according to his

recollection, he never made any such statement to
the defendant prior to the arrest of plaintiff. [*Id.* at
562.]

Because there were disputed facts in *Thompson* as
to the probable cause issue itself, the judge was
correct in allowing the jury to determine the
issues. *Thompson* is inapposite to the instant case.

Therefore, the only determination to be made in
this case is whether, where it is undisputed that
the plaintiff claimed he had a right to the money
but other evidence in defendant Daniel's posses-
sion did not support this claim, the trial court
correctly found that the evidence presented by the
plaintiff was not adequate to prove the element of
lack of probable cause.[5] I can find no reason not to
so conclude.

As the trial judge properly decided, it was the
court, and not the jury, which was required to
decide the question of probable cause, a determina-
tion which "involves only the conduct of a reason-
able man under the circumstances." Prosser &
Keeton, *supra,* § 119, p 882. In so doing, it was
correct to view the facts, not as a legal technician
would view them, but as the prudent, cautious
person would see the situation. *Merriam v Conti-
nental Motors Corp,* 339 Mich 546; 64 NW2d 691
(1954); *Clanan v Nushzno, supra.* In this case, the
standard required a finding that Danny Daniel
had probable cause to believe a crime had been
committed when he approached the prosecutor.
Although it was argued that Mr. Koski's assertion
that he was entitled to the money, if found to be
true, would negate the specific intent element of

---

[5] The trial court correctly determined that, in Michigan, discharge
of the plaintiff at the preliminary examination is not, of itself,
evidence of want of probable cause. *Prine v Singer Sewing Machine,*
176 Mich 300; 142 NW 377 (1913); *Stefanic v Montgomery Ward & Co,*
358 Mich 460; 100 NW2d 250 (1960).

the crime of larceny, the trial judge correctly found that Mr. Daniel was not required to make a determination as to intent "beyond a reasonable doubt" before proceeding or to judge the situation as would a legal scholar.

It is true that, in a criminal trial, a finding of a reasonable doubt as to Mr. Koski's larcenous intent, based upon a bona fide belief in his right to the money, would require acquittal. *People v Hillhouse,* 80 Mich 580; 45 NW 484 (1890); Commentary to CJI 23:6:01, p 23-50. It is clearly not true, however, that probable cause was negated simply because Mr. Koski said he had a right to endorse the checks and apply the proceeds to expenses, when the only people with authority to allow Mr. Koski to endorse the checks, the officers of the Madison Heights Police Officers Association, told Mr. Daniel that Mr. Koski had no such authority. As Danny Daniel noted at trial, when asked if Mr. Koski had asserted he had a right to the money, "That doesn't make it true." Mr. Daniel had been told by the officers of the MHPOA that Mr. Koski did not have permission and Mr. Daniel was also aware that the contract, signed by Mr. Koski, provided that all checks were to be deposited in the MHPOA account.[6]

---

[6] Specifically, the contract provided:

4. It is understood, further, that the ASSOCIATION desires to share in any profits originating from the publication. Therefore, the parties agree that after payment of all expenses required to complete the magazine and distribution of the publication to all homes and businesses in the City of Madison Heights the remaining profit will be divided as covered in the paragraph listed below. Direct costs shall include but not be limited to: salaries, sales commissions, office rent, taxes, telephone, postage, printing, addressing, supplies, typesetting, keylining, photographic, mileage, accounting and legal fees if necessary and other expenses that MONITOR can justify to complete successful publication and distribution of the magazine. MONITOR agrees to exercise prudent business practices to assure that costs and expenses shall remain reasonable.

Since probable cause is a matter of the appearances presented to the defendant, a mistake of fact as to the conduct of the accused will of course not prevent its existence. Some courts have held that a mistake of law, as to whether such conduct amounts to a criminal offense, or to the particular offense charged, cannot protect the instigator of prosecution—apparently upon the antique and questionable theory that he is required at his peril to know the law. For the most part such cases appear to have involved mistakes of law so extreme that they would be unreasonable even for a layman to make. [Prosser & Keeton, *supra*, § 119, p 877.][7]

(a) The ASSOCIATION shall receive a minimum payment of $5,000; providing the conditions stated in this agreement are met, and that revenues generated from advertising sales warrant the payment. The ASSOCIATION shall share in remaining profits at a rate of 30% until an additional $3,000 is attained amounting to a maximum payment of $8,000. MONITOR shall also share in the profits at a rate of 70% after the initial $5,000 is paid to the ASSOCIATION and if the $8,000 is, in fact, achieved, MONITOR shall be entitled to the remaining funds.

5. The ASSOCIATION will open a special bank account, or use it's [sic] existing account for the deposit of all advertising revenues collected, the money to be held in trust to insure publishing costs, expenses and against the profit-split. It is mutually understood that the ASSOCIATION must, in turn, issue payments from this account to MONITOR based on these collections as the day-to-day costs arise for expenses incurred by MONITOR to pay the overhead in carrying out the project.

---

[7] The dissenting opinion's claim that the Restatement of Torts, 2d, has modified this view is without merit. It is uncontroverted that the Restatement specifically states that one has probable cause for initiating proceedings if he correctly or reasonably believes:

(a) that the person whom he accuses has acted or failed to act in a particular manner, and

(b) that those acts or omissions constitute the offense that he charges against the accused, and

(c) that he is sufficiently informed as to the law and the facts to justify him in initiating or continuing the prosecution. [3 Restatement Torts, 2d, § 662.]

Thus, the relevant inquiry is, *if* Mr. Daniel did make a mistake of law or facts, was it reasonable. As the magistrate noted at the preliminary examination, "determining what the criminal or . . . what a

If the trial court had accepted the argument that Daniel's knowledge of a possible "defense" negated probable cause as a matter of law, it would have been opening up a veritable Pandora's box. At this point, according to my colleagues' reasoning, despite an allegation of a crime, objective evidence in corroboration, and an admission by the suspect, a civilian would have to undertake a full-scale effort to resolve conflicting allegations which would, in essence, amount to a complete trial where guilt and innocence would be determined by a jury of one—one who would still be at peril if a reasonable mistake of law or fact were made.

This Court directly addressed this type of situation in *DeVitis v Newcomb-Endicott Co,* 264 Mich 1; 249 NW 487 (1933), and correctly concluded that such an investigation was not required. In *DeVitis,* the defendant in the malicious prosecution action had informed the prosecutor that the plaintiff had sold property which she had leased by signed contract from the defendant. It was later learned, after the plaintiff had been acquitted, that the plaintiff, according to the custom in the industry at that time, had signed a blank sheet and was unaware that it was a lease and not an open credit account. In reversing a judgment for the plaintiff and finding that a verdict should have been directed for the defendant, we noted:

> The record is wholly to the effect that Mr. Maynard disclosed to the prosecuting attorney all material facts relating to the matter within his knowledge. He did not investigate to learn what defense or contention, if any, plaintiff intended to

person's intent is of course is very difficult, it would be difficult in this case." In light of the circumstances of this case, the trial court correctly found that Daniel had probable cause, according to the Restatement criteria.

make, nor was he required to do so. *Dunlap v New
Zealand Fire & Marine Ins Co,* 109 Cal 365 (42 Pac
29) [1895]. He relied on the contract. If he had
gone into its antecedents, had checked the original
sales slips, he might have learned that the con-
tract had been signed in blank in accordance with
store custom, and that plaintiff had had a charge
account from which some items were taken into
the contract, but he did not do that, and had no
such knowledge, nor do we think he was required
so to do.

In a note reviewing many cases, 5 ALR 1695, it
is said:

"If there are sufficient facts to warrant an ordi-
narily prudent person in believing that another
has committed a crime, failure to make further
investigation before instituting a prosecution does
not constitute a want of probable cause."

And, at page 1699:

"It does not show a want of probable cause for a
person to fail to exhaust all sources of information
before instituting a proceeding."

And page 1700:

"It does not show a want of probable cause for a
person to fail to verify each item of information
received, before proceeding thereon."

\* \* \*

If defendant had instituted a civil suit upon the
contract, such contract bearing, unquestionably,
plaintiff's signature, would have been *prima facie*
evidence in respect of defendant's rights under it.
[264 Mich 4-5.]

These cases stand for the proposition that where
there are sufficient facts to warrant a prudent
person in defendant's position to believe that a
crime was committed and the defendant commit-
ted it, the failure to make a further investigation
does not negate probable cause.[8]

---

[8] The Restatement takes the view that the accuser cannot have

The dissenting opinion appears to rest on a feeling that Mr. Daniel should have investigated further. As the history of the investigation demonstrates, the anomaly of this position is that there were no further material facts to be investigated. Had Mr. Daniel undertaken further investigation he could have found, as to Mr. Koski, nothing more than that which he already knew, i.e., Mr. Koski claimed he had a right to the money. The fact that Mr. Daniel might have discovered that an officer of MHPOA had been embezzling money or that the MHPOA had not discharged its obligation to retain the money that it had received in trust to pay the expenses, (*post,* pp 446-447), is simply immaterial to the issue either of probable cause or of defendant's duty to investigate regarding Mr. Koski. The possibility that further investigation would have revealed that the person who would have been the chief witness against Mr. Koski was

probable cause unless he holds a personal subjective belief in the guilt of the accused, 3 Restatement Torts, 2d, § 662, comment c. It is only when the accuser honestly but mistakenly believes the accused to be guilty that the question whether his belief was based on reasonable grounds becomes material. In short, under the Restatement test, the accuser must believe in the accused's guilt, and that belief must be reasonable. However, the mere fact that the accuser believes in the accused's guilt does not establish that the belief is reasonable. The belief must rest on facts which would lead a reasonably prudent person to so believe. Thus, as the comment to the Restatement indicates:

> Circumstances known or believed by the accuser may be incriminating to the accused and yet may not so clearly indicate guilt that a reasonable man would initiate criminal proceedings without investigation. [§ 662, comment j on clause (c), p 428.]

We have no occasion to consider whether this Court should adopt the subjective belief standard of the Restatement as that issue has not been raised here. We do not read the Restatement comment as saying anything different regarding the need for investigation than the ALR annotation, but neither have we occasion to consider this question. On this record, there were no additional material facts regarding Mr. Koski that could have been investigated and, in fact, Mr. Daniel did not initiate criminal proceedings without an investigation.

himself chargeable with a separate and distinct criminal offense or that Mr. Koski had a civil claim against the MHPOA for breach of its contractual obligation, might have led the prosecutor's office in the exercise of its discretion to decide not to seek the issuance of a warrant for Mr. Koski. However, the fact that the prosecutor's office might decline to exercise a warrant for reasons extraneous to the probable cause determination is irrelevant to whether Mr. Daniel had probable cause to believe Mr. Koski had committed a crime.

Although the dissent makes it appear that Mr. Koski had been *falsely* accused of larceny by conversion, it is undisputed that the contract provided that the advertising revenues were to be deposited in the police officers association account and that Mr. Koski, in fact, forged the endorsement of the MHPOA on various checks. Mr. Koski admitted to Mr. Daniel that he had done so, but claimed it was proper for him to take such action since the MHPOA owed him money, despite his acknowledgment that no officer of the association had agreed to allow this "conversion." In fact, at one point, Mr. Koski informed Mr. Daniels that the reason he had cashed the checks made out to the MHPOA by Oakland Dodge was because he needed funds "to get up north."

As Judge CAPRATHE correctly noted in his dissent in the Court of Appeals:

> More importantly, no interpretation of these facts would permit plaintiff to use the self-help method of collecting the civil debt which he believed was owed to him by the association. There were proper legal channels open to plaintiff to collect the alleged debt. The mere fact that plaintiff claimed the association owed a debt to him does not affect the probable cause issue, since it is clear that plaintiff had no legal right to endorse

the checks with the association's name or to cash them and convert the funds to his own use. [137 Mich App 491, 525; 358 NW2d 620 (1984).]

Finally, as appellant contends, it appears on this record that Mr. Daniel did make a full and fair disclosure to the assistant prosecuting attorney who authorized the charge.[9] Although Mr. Daniel stated that he would have had no reason to specifically tell the prosecutor of Mr. Koski's claim of right to the money, he did state that the transcribed interview of Mr. Koski by Mr. Daniel would have been given to the prosecuting attorney. Further, Richard Thompson, the prosecutor who authorized the charge, testified that the interview was in the prosecutor's file and that an assistant prosecutor routinely goes over the documentation in the file. It is well-settled that one who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution. *Modla v Miller, supra.* In this case, the trial court could have correctly concluded that Mr. Daniel did so and directed a verdict on that basis.

We reverse the decision of the Court of Appeals with regard to Mr. Daniel and reinstate the trial court's order granting the defendant's motion for a directed verdict.

Williams, C.J., and Brickley and Riley, JJ., concurred with Boyle, J.

Williams, C.J. I concur with Justice Boyle. However, I am not as fully convinced as she that the trial court correctly exercised its discretion in granting a directed verdict for defendant Daniel.

[9] It must again be noted that, if there was a full and fair disclosure, the question of an independent basis for finding probable cause is moot.

Levin, J. (*dissenting*). This is an action for malicious prosecution. I write separately because (1) this Court should not decide—even if the question of probable cause is, in the instant case, solely for a court to decide as a question of law—whether there was probable cause until after the trial court and the Court of Appeals have reviewed the record for that purpose, (2) Daniel, a layman, was not sufficiently informed concerning the law to justify him in initiating the prosecution against Koski unless he was advised to do so by an attorney after full disclosure of the facts within his knowledge and information, and (3) whether Daniel made full disclosure of all the facts is a jury question especially since there were credibility issues.

I

An element of an action for malicious prosecution is that the defendant initiated the criminal proceedings against the plaintiff without probable cause.[1] In the absence of a conflict in the testimony

---

[1] 3 Restatement Torts, 2d, § 653, p 406.

Two of the four elements of an action for malicious prosecution were clearly satisfied, see Prosser & Keeton, Torts (5th ed), § 119, p 871; *Turbessi v Oliver Iron Mining Co,* 250 Mich 110, 112; 229 NW 454 (1930). A prosecution was caused to be commenced by Daniel against Koski, and those proceedings terminated in Koski's favor.

In directing a verdict, the trial judge did not advert to the element of malice. The Court of Appeals said that for that reason it had not discussed the question of malice, but that on retrial malice would be a jury question. The statement by the Court of Appeals that "if the jury finds a lack of probable cause, it may thereupon infer malice," *Koski v Vohs,* 137 Mich App 491, 520; 358 NW2d 620 (1984), finds support in *Davis v McMillan,* 142 Mich 391, 402; 105 NW 862 (1905). No issue in regard to malice has been presented on this appeal.

I agree with Daniel that the Court of Appeals erred in stating that "the dismissal on the merits of the larceny by conversion charge against plaintiff by the district judge at the conclusion of the preliminary examination is evidence of a lack of probable cause to prosecute on the part of defendant Daniel." *Koski v Vohs, supra,* p 517. While that is, indeed, the rule in many jurisdictions (Prosser & Keeton, Torts [5th ed], § 119, p 881; Restatement Torts, 2d, § 663), the rule in

concerning the circumstances, presenting an issue of fact for jury determination, the court determines—we all agree—whether the defendant had probable cause for initiating the prosecution.[2]

The Court of Appeals concluded that there was, in the instant case, a conflict in the testimony and reversed a directed verdict against plaintiff Aldred E. Koski entered by the trial judge at the conclusion of Koski's proofs.

A majority of this Court concludes that there was no dispute of fact and the question of probable cause should therefore have been decided by the court and not by a jury. The majority proceeds to review the record, and further concludes that defendant Danny R. Daniel had probable cause to initiate the prosecution.

In so ruling, the majority states that the facts should be viewed as a "prudent, cautious person would see the situation,"[3] and, applying that standard, Daniel had probable cause to initiate the prosecution. The majority further states that although Koski would not have been guilty of the charged criminal offense if he did not have a larcenous intent,[4] that would not necessarily negate probable cause because both the contract document and officers of the Madison Heights Police Officers Association disputed Koski's claim that he had been authorized to accept delivery of and to endorse checks to the order of the MHPOA and to use the proceeds for the publication of the

---

this state is that the discharge of the defendant at the conclusion of the preliminary examination "has not in itself any tendency to show a want of probable cause . . . ." *Davis v McMillan, supra,* p 402. See also *Prine v Singer Sewing Machine Co,* 176 Mich 300, 320; 142 NW 377 (1913); *Stefanic v Montgomery Ward & Co,* 358 Mich 460, 462; 100 NW2d 250 (1960).

[2] 3 Restatement Torts, 2d, § 673, p 448 and accompanying comment on clause (c).

[3] *Ante,* p 432.

[4] *Ante,* p 433.

magazine without running them through the
MHPOA account.[5] The majority adds that a reason-
able mistake of law as to whether conduct
amounts to a criminal offense, as well as a reason-
able mistake of fact as to the conduct of the
accused, does not preclude a finding of probable
cause.[6] The majority further adds that Daniel
made full and fair disclosure to the prosecuting
attorney and therefore is not subject to liability in
an action for malicious prosecution.[7]

## II

Neither the trial judge nor the Court of Appeals
reviewed the record to determine whether, viewing
the question of probable cause as one of law, there
was probable cause.

The trial judge apparently thought that the
probable cause question was for the jury, and
directed a verdict against Koski because the judge
did not see how the jury could fail to conclude that
there was probable cause: "I do not see how the
jury, based upon what has been presented here,
could say that there was not probable cause."[8]

---

[5] *Ante,* p 433.

[6] *Ante,* p 435.

[7] *Ante,* p 439.

[8] The judge explained that, in his view, Koski was asking the jury
to draw unreasonable inferences, to indulge in assumptions and to
speculate: "And some of the language I hear used here, you're forced
to a conclusion, and you have to assume this, you draw some other
inference from this inference. And all those things, and I don't think
I can let a jury go on all the speculation."

While the judge said that Koski had "not sustained the burden" of
establishing probable cause, in the next sentence he said: "I do not
think that reasonable minds could differ in this and I'm going to take
it away from the jury and grant the motion in this matter." The
judge apparently thought that if reasonable minds could differ, the
question would have been for the jury; as he said at the beginning of
his ruling: "I do not see how the *jury,* based upon what's been
presented here, could say that there was not probable cause." (Em-
phasis supplied.)

Because the Court of Appeals concluded that there were disputed questions of fact, it did not review the record to determine whether, viewing the question as one of law, there was probable cause.

This Court should not bypass the trial court and the Court of Appeals on this issue. Even if, as the majority indicates, the trial court found "that as a matter of law defendants had probable cause to initiate criminal prosecution against plaintiff," the Court of Appeals has not, in all events, reviewed the record to determine whether, viewing the question as one of law, there was probable cause.

The appropriate course—following upon the majority's decision that there was no dispute of fact and the question of probable cause should have been decided by the court and not by a jury—is to remand either to the trial court or the Court of Appeals to determine whether, on the record so far made, there was probable cause. Only after their assessment should this Court consider whether further review by this Court is warranted.

III

The Restatement of Torts, 2d, states that a person has probable cause to initiate criminal proceedings if he "correctly or reasonably believes" that the accused acted in a particular manner, that the acts committed constitute the offense he charges the accused with committing, and "that he is sufficiently informed as to the law

---

The judge gave no indication that he understood or was proceeding on the basis that probable cause, in the absence of a conflict in the testimony presenting an issue of fact for jury determination, is a question of law for the court.

*and* the facts to justify him in initiating" the prosecution.[9] (Emphasis added.)

The majority quotes the foregoing language of the Restatement with apparent approval.[10] The majority nevertheless quotes, also with apparent approval, the following excerpt from an ALR annotation:

> If there are sufficient facts to warrant an ordinarily prudent person in believing that another has *committed a crime,* failure to make further investigation before instituting a prosecution does not constitute a want of probable cause"[11] [emphasis added],

and states, on the basis of the ALR excerpts quoted in its opinion:

> These cases stand for the proposition that where there are sufficient facts to warrant a prudent person in defendant's position to believe that *a crime was committed* and the *defendant committed it,* the failure to make a further investigation does not negate probable cause.[12] [Emphasis added.]

---

[9] One who initiates or continues criminal proceedings against another has probable cause for doing so if he correctly or reasonably believes

(a) that the person whom he accuses has acted or failed to act in a particular manner, and

(b) that those acts or omissions constitute the offense that he charges against the accused, and

(c) that he is sufficiently informed as to the law and the facts to justify him in initiating or continuing the prosecution. [3 Restatement Torts, 2d, § 662, p 423.]

The commentary to the Restatement of Torts, 2d, explains that a "private prosecutor's mistaken belief that the accused *is* guilty of the offense charged against him may be due to a mistake of fact, that is, a mistake as to what the accused has done or left undone. On the other hand, it may be due to a mistake of law, that is, a mistake in believing that the actual or supposed acts or omissions of the accused constitute the offense charged against him." 3 Restatement Torts, 2d, § 662, comment d, p 424.

[10] *Ante,* p 434, n 7.

[11] *Ante,* p 436.

[12] *Id.*

A

Manifestly, it is of considerable importance for purposes of a civil action for malicious prosecution, whether a person has probable cause to initiate a criminal prosecution if a prudent person would believe that the person to be prosecuted has committed or probably committed a crime, or whether, as the Restatement states, he must additionally correctly or reasonably believe "that he is sufficiently informed as to the law and the facts to justify him in initiating" the prosecution.

Consistent with its conclusion that probable cause is established when a prudent person would believe that the person to be prosecuted has committed or probably committed a crime, the majority states that where the facts are so sufficient, it is not necessary to investigate a "possible" defense that might "negate probable cause as a matter of law," that a person initiating a prosecution need not undertake a "full-scale effort to resolve conflicting allegations"[13] or "make a further investigation" that might "negate probable cause."[14]

It is, however, well-established, as set forth in the commentary to the black letter of the section of the Restatement quoted with apparent approval by the majority, that although the circumstances may be incriminating, they "may not so clearly indicate guilt that a reasonable man would initiate criminal proceedings *without investigation.*"[15] (Emphasis supplied.)

A rule that further investigation is not required where there is sufficient evidence that a crime was committed and the accused probably committed it would also ignore, as again set forth in the com-

[13] *Ante,* p 435.
[14] *Ante,* p 436.
[15] 3 Restatement Torts, 2d, § 662, comment on clause (c), p 428.

mentary to the Restatement, that "[i]n determining whether a person has probable cause for initiating criminal proceedings upon the facts known or reasonably believed by him to exist, the character of the accused as it is known *or should be known* to the accuser by reputation or experience is a *highly important factor.*"[16] (Emphasis supplied.)

### B

It appears that Koski was a man of good reputation. He had worked for many years as a news reporter for various newspapers and radio stations. For three years, he had worked with the Michigan State Police Troopers Association where his duties included editing a monthly tabloid for the state police.

Because Daniel thought that there was no need to investigate further after one of the officers of the MHPOA had contradicted Koski's assertion that he had been authorized to accept, endorse, and use the proceeds of checks made out to the order of the MHPOA, Daniel saw no need to examine the books and records of the MHPOA or of Koski. Koski had asked Daniel to do so and had suggested to Daniel that the money shortage might have been due to misuse of MHPOA money by an officer of the association.

Whether or not such a further investigation was warranted or would have been productive is, of course, a matter of judgment, a judgment which the majority of the Court has concluded, contrary to *Thompson v Price,* 100 Mich 558, 561; 59 NW 253 (1894),[17] is for the court rather than a jury to make.

---

[16] 3 Restatement Torts, 2d, § 662, comment h on clause (a), p 426.

[17] The supervisor of a township had been arrested on a charge of having wilfully neglected to require from a resident taxpayer a statement of his taxable property. After the conclusion of the prosecu-

In all events, it is not correct to say or suggest that when there is evidence sufficient to show that the requisite acts constituting the criminal offense have probably been committed by the accused further investigation is not required where there is contradictory evidence concerning the accused's defense.

The danger of such a rule is illustrated by the facts of this case where Daniel was told that Koski was not authorized to endorse the checks or use the proceeds by an officer of the MHPOA who, it was ultimately determined, had been embezzling funds of the MHPOA, but for whose misconduct the chain of events that led to Koski's prosecution probably would not have occurred.

C

The majority, on the basis of its assessment of the record, concludes that Daniel reasonably believed that Koski had acted in the manner charged and that those acts constituted the offense he charged Koski with committing. It is unclear whether the majority also concludes that Daniel was sufficiently informed as to the *facts* to justify him in initiating the prosecution, the majority apparently or possibly being of the view that no more is required to establish that there was probable cause. Be that as it may, it is clear that Daniel was not sufficiently informed as to the *law* to justify him in initiating the prosecution.

Daniel was a layman. As also set forth in the commentary to the black letter of the Restate-

tion, the supervisor commenced an action against the complaining witness for malicious prosecution. This Court held that "it was at least a question for the jury" whether the defendant was justified in initiating the prosecution "without making inquiry, direct, of the only person who was cognizant of the facts," the taxpayer.

ment, "[i]n the ordinary case a layman, aware of
his own ignorance of the law, will not be justified
in initiating the proceedings unless he has been
advised to do so by an attorney, in which case he
will be protected"[18] if advice is "sought in good
faith" and "given after a full disclosure of the
facts within the accuser's knowledge and informa-
tion."[19] If, however, "the layman elects to proceed
without this advice, he is ordinarily not acting as a
reasonable man and does not have probable cause,
since he knows or reasonably ought to know that
he does not" "have sufficient information to justify
him in taking the step."[20]

Thus, even if Daniel correctly or reasonably

---

[18] 3 Restatement Torts, 2d, § 662, comment i on clause (b), p 427.

[19] 3 Restatement Torts, 2d, § 666, p 433.

[20] 3 Restatement Torts, 2d, § 662, comment i on clause (b), p 427.
Judicial decisions so holding include *Bain v Phillips,* 217 Va 387; 228
SE2d 576 (1976); *Higgins v Pratt,* 316 Mass 700; 56 NE2d 595 (1944);
*Vasser v Berry,* 85 Ga App 435; 69 SE2d 701 (1952); see also *Rose v
Whitbeck,* 277 Or 791; 562 P2d 188 (1977); *Brown v Kisner,* 192 Miss
746; 6 So 2d 611 (1942).

There may, however, be situations in which a layman, even
without the advice of counsel, may reasonably believe that he
has enough information about the law of the matter to justify
him in going ahead. This may be true, for example, if he knows
that there is a statute on the books which by its terms clearly
makes the conduct in question a crime, and the accused escapes
conviction only because the statute is for the first time held to
be unconstitutional. In the absence of information to the con-
trary, the layman is justified in assuming that any statute is
valid, and if its terms are clearly applicable to the facts he has
probable cause for his action. The same is true when the
accused escapes conviction only because the statute is con-
strued by the court in a manner not readily apparent upon its
face to be inapplicable to the facts. There may be similar
situations in which the conviction fails because of refinements
of law that the reasonable layman could not be expected to
know or to anticipate and on which he could not reasonably be
expected to seek advice. Examples are the lack of jurisdiction of
an inferior court over offenses of a particular kind or border-
line distinctions in the degrees of larceny provided by particu-
lar statutes. [3 Restatement Torts, 2d, § 662, comment i on
clause (b), p 427.]

believed that he was sufficiently informed concerning the facts to justify him in initiating the prosecution,[21] he did not act as a reasonable person and did not have probable cause to initiate the criminal prosecution against Koski unless he made full disclosure of the facts within his knowledge and information to an attorney—in this case, because he dealt with no other attorney, the prosecuting attorney.

IV

Daniel acknowledged at the trial that he mainly considered the way the checks were made payable, the way they were endorsed, and how the funds were used. When Daniel requested the prosecutor to issue a warrant for Koski's arrest, he presented three checks endorsed by Koski, an incident report, and his own written report which did not disclose Koski's claim that he was authorized to endorse the checks and use the proceeds without running them through the MHPOA account.

The majority states:

Although Mr. Daniel stated that he would have had no reason to specifically tell the prosecutor of Mr. Koski's claim of right to the money, he did state that the transcribed interview of Mr. Koski by Mr. Daniel *would have been given* to the prosecuting attorney. Further, Richard Thompson, the prosecutor who authorized the charge, testified that the interview was in the prosecutor's *file* and that an assistant prosecutor *routinely* goes over the documentation in the file. It is well-settled that one who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution. *Modla v Miller,* [344 Mich 21; 73 NW2d 220 (1955)]. In this case, the trial court could have correctly concluded that Mr. Daniel did

[21] See n 9.

so and directed a verdict on that basis.[22] [Emphasis supplied.]

Although it is indeed ordinarily the function of the court to determine whether the defendant had probable cause for initiating the proceedings, it is "for the jury to find whether the accused laid before the attorney all the facts he knew or of which he had reliable information . . . ."[23]

A jury is not required to accept even the uncontradicted testimony of a disinterested witness.[24] Neither Daniel nor the assistant prosecutor can, in all events, properly be regarded as disinterested witnesses. Daniel was a defendant, and the assistant prosecutor's superior, the Oakland County Prosecutor, was also a defendant.[25]

It was for the jury to decide whether Daniel did in fact deliver a copy of the transcribed interview with Koski to the assistant prosecutor, whether if this was done at all it was done before the warrant was issued, and whether the manner and time of delivery was such as to constitute presenting "all the facts" for advice before the warrant was issued.

In sum, it was for the jury to decide whether "all the facts" that Daniel knew or "of which he had reliable information" were presented to the assistant prosecutor before the warrant was issued. Daniel, absent such a full disclosure, would not have acted reasonably in initiating the criminal

[22] *Ante,* p 439.

[23] 3 Restatement Torts, 2d, § 666, comment g on clause (b), p 437; *Webster v Fowler,* 89 Mich 303, 304; 50 NW 1047 (1891).

[24] See *People v Jackson,* 390 Mich 621, 625; 212 NW2d 918 (1973); *Woodin v Durfee,* 46 Mich 424, 427; 9 NW 457 (1881).

[25] At the conclusion of the plaintiff's proofs, the judge directed a verdict in favor of all the defendants, including the Oakland County Prosecutor. The Court of Appeals affirmed as to all the defendants except Daniel. The issues on this appeal concern only Daniel.

prosecution against Koski because, as a layman, Daniel was not sufficiently informed concerning the law to initiate the prosecution absent advice to do so by an attorney. The majority therefore errs in concluding that Daniel had probable cause simply because, in its assessment of the record, he was sufficiently informed of the facts to justify him in concluding that Koski had acted in the manner charged and that those acts constituted the offense charged.

I would remand to the trial court for further proceedings consistent with this opinion.

CAVANAGH and ARCHER, JJ., concurred with LEVIN, J.